Filed 11/19/13  Integrity Escrow v. Flagstar Bank CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| INTEGRITY ESCROW, INC., | |
| Plaintiff and Appellant, | G047937 |
| v. | (Super. Ct. No. 30-2011-00448747) |
| FLAGSTAR BANK, FSB, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Franz E. Miller, Judge.  Affirmed.

Stocker & Lancaster and Michael J. Lancaster for Plaintiff and Appellant.

Palmer, Lombardi & Donohue, Roland P. Reynolds and Alison R. Kalinski for Defendant and Respondent.

\*          \*          \*

## INTRODUCTION

Mortgage lender Flagstar Bank, FSB (Flagstar), decided in early 2011 to make licensed escrow agent Integrity Escrow, Inc. (Integrity), ineligible to do business with Flagstar. Flagstar included Integrity's name on a list of ineligible escrow agents; the list was made available to the mortgage brokers with whom Flagstar does business. Flagstar also told one mortgage broker that Flagstar had "blacklisted" Integrity.

Integrity sued Flagstar for intentional interference with contractual relations and with prospective economic advantage, unfair business practices, and defamation. The trial court granted Flagstar's motion for summary judgment. We conclude there was no triable issue of material fact as to any of Integrity's causes of action against Flagstar, and Flagstar was entitled to judgment against Integrity as a matter of law.

In brief, the claim for intentional interference with contractual relations fails because Integrity did not produce evidence of the requisite contracts. The claims for intentional interference with prospective economic advantage and defamation fail because the evidence shows Flagstar's actions were privileged (in accord with uniform federal cases facing the same issue), and Integrity failed to show malice. Finally, the evidence does not support the unfair business practices claim, under any theory advanced by Integrity. We therefore affirm the judgment.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Flagstar is a federal savings bank and mortgage lender, based in Troy, Michigan. It funds residential mortgage loans secured by properties in California, as well as in other states. Flagstar enters into agreements with mortgage brokers, allowing those brokers to submit loan applications on behalf of the brokers' borrower-clients. If approved, Flagstar makes loans directly to the borrower-clients. The mortgage loan transactions are completed by escrow agents. Flagstar maintains a list of eligible escrow

2

agents with which it will do business, as well as a list of ineligible escrow agents with which it will not do business. Flagstar maintains the lists to minimize its risk of exposure to fraudulent transactions. The lists of eligible and ineligible escrow agents are available on Flagstar's password-protected Web site, and can only be viewed by Flagstar employees and Flagstar-approved mortgage brokers.

Integrity is an escrow agent licensed to do business in the State of California. Before January 2011, Integrity was on the list of escrow agents eligible to do business with Flagstar.

Optimum First Mortgage (Optimum) is a mortgage broker. Optimum and Integrity had an oral agreement that Optimum would refer at least 25 percent of its refinance escrows to Integrity. Flagstar began an investigation of Optimum when Flagstar discovered an altered employment verification in a loan application (which verification was ultimately proven to be false) and unexplained cash payments. Flagstar reviewed 20 loans brokered by Optimum, all of which had used either Integrity or Complete Escrow Service Corporation (Complete) as the escrow agent. During the investigation, Integrity's status was changed from eligible to ineligible to do business with Flagstar. Integrity failed to respond to Flagstar's requests to review its files, and Integrity's ineligible status was made permanent due to its failure to cooperate, in or about January 2011. (Complete's status was also changed to ineligible.)

Flagstar updated its Web site to reflect Integrity's ineligible status. On January 19, 2011, Flagstar advised Optimum that Integrity's status had been changed to ineligible, and further advised Optimum that it would not fund any loans on which Integrity was the escrow agent. As of that time, Integrity had been referred by Optimum as the escrow agent for 16 mortgage loans that were going to be funded by Flagstar. Each of those escrows was transferred from Integrity to another escrow agent. Integrity would have realized a fee of $560 on each of those escrows, for a total claimed loss of $8,960. Integrity also claimed damages for other escrow business it did not receive from

3

Optimum and other mortgage brokers because those brokers were seeking to obtain funding from Flagstar and, therefore, could not use Integrity as the escrow agent due to its ineligible status with Flagstar.

Integrity sued Flagstar for intentional interference with contractual relations, intentional interference with prospective economic advantage, unfair business practices, and defamation. Flagstar moved for summary judgment or, in the alternative, summary adjudication of each of the causes of action. The trial court granted the motion for summary judgment, and entered judgment in favor of Flagstar. Integrity timely appealed. (Complete also sued Flagstar, and Flagstar also filed a motion for summary judgment or, in the alternative, summary adjudication, against Complete's causes of action. The judgment entered against Complete is the subject of a separate appeal, *Complete Escrow Service Corporation v. Flagstar Bank, FSB*, No. G047905.)

DISCUSSION

I.

*STANDARD OF REVIEW*

We review an order granting summary judgment de novo. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Village Nurseries v. Greenbaum* (2002) 101 Cal.App.4th 26, 35.) A motion for summary judgment is properly granted if the moving papers establish there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) "To prevail on the motion, a defendant must demonstrate the plaintiff's cause of action has no merit. This requirement can be satisfied by showing either one or more elements of the cause of action cannot be established or that a complete defense exists. [Citations.] If the defendant meets this requirement, the burden shifts to the plaintiff to demonstrate a triable issue of material

4

fact exists.  [Citations.]"  (*We Do Graphics, Inc. v. Mercury Casualty Co*. (2004) 124 Cal.App.4th 131, 135-136.)

We review the trial court's evidentiary rulings for abuse of discretion. (*Ceja v. Department of Transportation* (2011) 201 Cal.App.4th 1475, 1481.)

## II.

### *INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS*

"The elements of a cause of action for interference with contractual relations are: (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of this contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damages.  [Citation.]  Proof the interfering conduct was wrongful, independent from the interference itself, is not required to recover for interference with contractual relations.  [Citation.]"  (*Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 237-238.)

Integrity's second amended complaint alleged the existence of 16 "existing escrow agreements and economic relationships" with which Flagstar allegedly interfered. In support of the motion for summary judgment, Flagstar offered admissible evidence that there were no enforceable contracts with respect to the 16 escrow agreements because none of the potential borrowers had signed the escrow instructions.  "[A] cause of action for intentional interference with contract requires an underlying *enforceable* contract. . . . The tort of interference with contractual relations protects an *existing, formally cemented* economic relationship."  (*PMC, Inc. v. Saban Entertainment, Inc.* (1996) 45 Cal.App.4th 579, 601, original italics.)

In opposition, Integrity offered no evidence that any enforceable contracts existed; indeed, in its objections to the admission of each of the unsigned escrow instructions, Integrity stated:  "Flagstar caused the termination of this escrow *before it*

5

*was fully executed*." (Italics added.)[1]  In neither of its appellate briefs does Integrity

argue the 16 escrows were the subject of executed, enforceable contracts.  There was no

admissible evidence that a triable issue of material fact existed as to a necessary element

of the claim, and the trial court correctly determined Flagstar was entitled to summary

judgment on the cause of action for intentional interference with contractual relations.[2]


III.

*INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE*

"The elements of a cause of action for interference with prospective

economic advantage are:  (1) an economic relationship between the plaintiff and a third

party, with the probability of future economic benefit to the plaintiff; (2) the defendant's

knowledge of the relationship; (3) the defendant's intentional and wrongful conduct

designed to interfere with or disrupt this relationship; (4) interference with or disruption

of this relationship; and (5) economic harm to the plaintiff proximately caused by the

defendant's wrongful conduct.  [Citation.]  [¶] To establish intentional interference with

prospective economic advantage, a plaintiff must plead and prove the defendant 'engaged

in conduct that was wrongful by some legal measure other than the fact of interference

itself.'  [Citation.]  An act is independently wrongful 'if it is unlawful, that is, if it is

proscribed by some constitutional, statutory, regulatory, common law, or other

determinable legal standard.'  [Citation.]" (*Sole Energy Co. v. Petrominerals Corp.*,

*supra*, 128 Cal.App.4th at p. 241.)

---

[1]  The trial court overruled Integrity's objections to the escrow instructions.
Although Integrity challenges some of the trial court's evidentiary rulings on appeal, it
does not challenge the ruling on this evidence.

[2]  Flagstar argues (1) it could not be liable for interfering with contractual relations
because it was a party to the contract, and (2) there was not a triable issue of material fact
as to the element of intent to induce a breach.  Because of our holding that Flagstar
successfully negated the existence of the element of an enforceable contract, we need not
reach these issues.

6

In its cause of action for intentional interference with prospective economic advantage, Integrity alleged Flagstar interfered with its prospective contracts with the 16 escrows discussed *ante*, as well as with Integrity's relationships with Optimum and other mortgage brokers that allegedly refused to do business with Integrity after it was placed on Flagstar's ineligible list.

Flagstar offered admissible evidence that the only conduct by which it had allegedly interfered with Integrity's business was placing Integrity on its ineligible list. Integrity did not offer any admissible evidence disputing Flagstar's argument that, in the absence of any contractual arrangement between Flagstar and Integrity, Flagstar had the right to decide with whom it would do business. (See *Kasparian v. County of Los Angeles* (1995) 38 Cal.App.4th 242, 266 ["If a party has no liability in tort for refusing to perform an existing contract, no matter what the reason, he or she certainly should not have to bear a burden in tort for refusing to *enter into* a contract where he or she has no obligation to do so"]; *Overland P. Co. v. Union L. Co.* (1922) 57 Cal.App. 366, 370-371 ["It is the right of every man to engage to work for or to deal with, or to refuse to work for or to deal with, any man or class of men as he sees fit, whatever his motive or whatever the resulting injury, without being held in any way accountable therefor. [Citations.] These rights may be exercised in association with others so long as they have no unlawful object in view"]; *Klamath-Lake Pharm. v. Klamath Med. Serv. Bureau* (9th Cir. 1983) 701 F.2d 1276, 1292 [business arrangement "was simply an exercise of its freedom to contract with whomever it chose in order to sustain itself in the marketplace"]; *Klamath-Lake Pharm.*, *supra*, at p. 1292, fn. 16 ["This freedom extends to the manufacturer who for any lawful reason terminates one distributor or supplier and puts another in its place, even if the terminated businessman is put out of business"].)

Integrity admits the truth of this rule of law in its opening brief on appeal, where it asserts: "You can cho[o]se not to do business with someone. However, you cannot tell everyone in the neighborhood they can't do business with the person you

chose not to do business with." The fallacy in this argument is that Integrity failed to offer any admissible evidence that Flagstar told anyone not do business with Integrity. The undisputed evidence shows Flagstar advised mortgage brokers, including Optimum, that Flagstar would no longer do business with Integrity. Any mortgage broker remained free to use Integrity as an escrow agent, as long as the loan was to be funded by a company other than Flagstar. Alternatively, a mortgage broker who desired to have Flagstar fund its client's loan would be required to select an escrow agent other than Integrity.[3] Nothing in the appellate record even hints that Flagstar was the only lender making the types of loans involved here. The undisputed evidence shows that Flagstar did not instruct or advise other lenders not to do business with Integrity, and Integrity did not lose any business as the escrow agent on mortgage loans funded by lenders other than Flagstar. Therefore, Flagstar's identification of Integrity as an ineligible escrow agent was not independently wrongful conduct.

Integrity claimed that the independent wrongful conduct was Flagstar's alleged defamation and violation of the Real Estate Settlement Procedures Act of 1974, 12 United States Code section 2601 et seq. (RESPA).


A. *Alleged Defamation*

"The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." (*Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1369; see *Taus v. Loftus* (2007) 40 Cal.4th 683, 720; Civ. Code, §§ 44, 45, 45a, 46, 47.) Integrity failed to offer

---

[3] This is not inconsistent with Integrity's claim that the borrower has the right to decide which escrow agent to choose. The borrower's right to choose an escrow agent cannot force any other party—including, but not limited to, the lender—not wishing to do business with a particular escrow agent to participate in the transaction. The borrower has the choice to do business with the lender or with the escrow agent if one refuses to do business with the other, but cannot force either or both of those entities to participate in the deal.

admissible evidence creating a triable issue of material fact as to the falsity or lack of privilege in Flagstar's publications, whether verbal or on its Web site.

### 1. *Falsity*

The publication of Integrity's name on the ineligible list rather than on the eligible list was not false, and Integrity did not dispute that material fact. Truth is an absolute defense to a defamation claim. (*Ringler Associates Inc. v. Maryland Casualty Co.* (2000) 80 Cal.App.4th 1165, 1180.) On appeal, Integrity argues that placing it on the ineligible list was untruthful because only the California Department of Corporations can make Integrity ineligible to serve as an escrow agent. Flagstar's Web site only identifies which escrow agents are eligible or ineligible "to handle Flagstar mortgage loan transactions." Integrity did not offer any evidence that Flagstar's Web site said anything other than that Integrity was not eligible to handle Flagstar loans. Optimum's president testified that Flagstar's list of approved escrow agents meant "you can do business with these escrow companies if you choose to take a loan to Flagstar Bank."

Matthew Dohman, an officer of Optimum, submitted a declaration in opposition to Flagstar's motion for summary judgment, reading in relevant part as follows: "Tim Kearney is employed by Flagstar Bank. He is the Flagstar Bank Account Executive for Optimum First Mortgage. [¶] . . . On January 19, 2011, I received a call from Tim Kearney at approximately 3:00 p.m. During the call, Tim Kearney stated to me that Flagstar Bank had audited about twenty (20) Optimum loan files. He said that Flagstar Bank had Blacklisted[4] both Complete Escrow and Integrity Escrow, and instructed me to switch all of our current escrows with Complete Escrow and Integrity Escrow to another escrow company. He said Complete Escrow and Integrity Escrow

---

[4] Webster's Third New International Dictionary (2002) at page 227, column 1, defines a "blacklist" as "a list of persons that are disapproved of or are to be punished or discriminated against."

9

were no longer eligible to act as escrow agents on any Flagstar Bank loans. [¶] . . . [¶] . . . I asked Tim Kearney if he knew the reason Flagstar Bank was Blacklisting Complete Escrow and Integrity Escrow. He said he did not. He said he was just instructed to inform me of the action taken by Flagstar Bank and to make it clear that Flagstar Bank would not allow any loans to close if we used Complete Escrow or Integrity Escrow. [¶] . . . I asked Tim Kearney about the status of Complete Escrow and Integrity Escrow several times during 2011. I asked why they are listed as 'ineligible' and if there had been any change. Each time Tim Kearney advised me he still does not know any reasons, and they are both still listed on Flagstar Bank[']s website as 'ineligible' escrow agents."

### 2. *Privilege*[5]

Civil Code section 47, subdivision (c) provides, in relevant part: "A privileged publication or broadcast is one made: [¶] . . . [¶] (c) In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent . . . ."

To determine the applicability of the common interest privilege as a defense to defamation, the defendant (in this case, Flagstar) bears the burden of proof on the issue of the existence of the privilege, and the plaintiff (here, Integrity) bears the burden of

---

[5] Integrity argues that Flagstar never alleged the common interest privilege as an affirmative defense. To the contrary, Flagstar's 34th affirmative defense reads: "Defendant is informed and believes and thereon alleges that Plaintiff cannot recover for defamation because the alleged statements were privileged." Integrity's unsupported contention that "[a] general allegation of privilege is not sufficient" to avoid waiver of the affirmative defense is incorrect. The rule requiring that the specific statute of limitations be alleged by reference to the applicable code section and subdivision does not apply to other affirmative defenses, such as privilege. (See *Hata v. Los Angeles County Harbor/UCLA Medical Center* (1995) 31 Cal.App.4th 1791, 1805-1806.) Given the causes of action alleged in the operative complaint and the wording of the affirmative defenses, there is no uncertainty as to what type of privilege was being asserted, and as against which cause of action.

proof on the existence of malice. (*Lundquist v. Reusser* (1994) 7 Cal.4th 1193, 1205-1213.) Flagstar met its burden of proving it had a common interest with those who heard or read its allegedly defamatory statements. Flagstar had a common interest with Optimum and the other mortgage brokers that had access to Flagstar's Web site listing the escrow agents with which it would do business; the process of residential mortgage approval and funding will be expedited and more cost efficient if the mortgage broker working with a borrower-client is aware of which combination of lender and escrow agent will be able to complete the process together.

Flagstar was entitled to refuse to do business with any entity it believed would subject it to a risk of financial or reputational harm, and well-settled law supports this conclusion. (*Family Home and Finance Ctr. v. Federal Home Loan* (9th Cir. 2008) 525 F.3d 822, 827 [common interest privilege defeats defamation claim by mortgage broker against Federal Home Loan Mortgage Corporation (Freddie Mac); Freddie Mac placed mortgage broker on exclusionary list, which was published "only to its lenders, with whom it shares a business relationship and common interest in dealing with investment quality loans"]; *Walton v. Freddie Mac (FHLMC)* (S.D.Ind., Mar. 22, 2013, No. 3:12-cv-00116-RLY-WGH) 2013 U.S.Dist. Lexis 40049, p. *7 [letter from Freddie Mac advising appraisal management company that Freddie Mac would place it on an exclusionary list was "nothing more than [a] standard business letter[] issued by Freddie Mac when it has cause to believe that doing business with a particular business will subject it to an undue risk of harm"]; *Prime Time Mortgage, Co. v. Flagstar Bank, FSB* (S.D. Ohio, May 4, 2005, No. 3:03-cv-337) 2005 U.S.Dist. Lexis 9354, p. *6 [Flagstar published to Mortgage Asset Research Institute (MARI) that the plaintiff had misrepresented the appraised value of a property; qualified privilege defeats defamation claim because Flagstar and MARI shared interest of providing mortgage professionals with whom they both do business information to prevent fraud].)

11

In addition, Integrity failed to meet its burden of establishing the existence of malice. In the context of the common interest privilege, malice is not inferred from the communication; rather, Integrity was required to establish actual malice by showing that Flagstar's statements were motivated by hatred of or ill will towards Integrity. (*Noel v. River Hills Wilsons, Inc.* (2003) 113 Cal.App.4th 1363, 1370.)[6] Flagstar offered evidence that Jennifer Kolp, a Flagstar vice-president, changed Integrity's status from eligible to ineligible because of irregularities discovered during an investigation. In the course of that investigation, Flagstar requested to review Integrity's files—a request to which Integrity never responded. Flagstar also offered evidence that the chief executive officer of Integrity did not have any reason to believe that Flagstar decided to change Integrity's status due to hatred or ill will.

In opposition, Integrity submitted evidence that Kolp learned of the escrows Integrity had in process when she received a letter from Integrity's counsel, *after* the decision had been made to place Integrity on the ineligible list; that Kolp intentionally placed Integrity on the ineligible list; that other Flagstar employees were unaware of Kolp's reasons for placing Integrity on the ineligible list; and that Flagstar had no justification or legal cause to change Integrity's status from eligible to ineligible. None of the evidence to which Integrity points establishes a triable issue of material fact that Flagstar acted with actual malice in placing Integrity on the ineligible list. (Integrity also submitted the declaration of its counsel of record, who opined that Kolp had only "lame excuses" for placing Integrity on the ineligible list. Counsel's opinions, rather than admissible evidence, are insufficient to meet Integrity's burden on summary judgment.)

---

[6] Malice may also be established through proof that the defendant lacked reasonable grounds for a belief in the truth of its statements and therefore acted in reckless disregard for the plaintiff's rights. (*Noel v. River Hills Wilsons, Inc.*, *supra*, 113 Cal.App.4th at p. 1370.) Because there is no dispute as to the truth of Flagstar's statements (i.e., Integrity was ineligible to process escrows on Flagstar's loans), Flagstar could not have lacked reasonable grounds for a belief in their truth.

### 3. *Injury*

The undisputed evidence showed that Optimum continued to refer business (other than Flagstar business) to Integrity after January 2011; Optimum had a good relationship with Integrity; Optimum would probably continue to refer business to Integrity in the future; Flagstar never told Optimum that it could not use Integrity to close non-Flagstar loans; and Integrity did not lose any business other than business from Flagstar.[7]

### B. *Alleged Violation of RESPA*

With regard to the alleged RESPA violation, Integrity's expert witness on escrow practices declared: "[I]t is not an industry practice for institutional mortgage lenders to maintain a 'blacklist' or 'exclusionary list' applicable to escrow companies. Many lenders and other companies have 'preferred lists[,']' which are companies they have prior experience doing business with. These are established business relationships just like the one between [Integrity] and Optimum First Mortgage. Flagstar Bank does not have the right to exclude any licensed escrow company in the State of California from any escrow transaction. In fact, Flagstar Bank does not have the right to choose or direct who the escrow company will be. With respect to residential loans, RESPA and HUD

---

[7] Integrity's chief executive officer, Tom Nguyen, testified at his deposition: "We are not losing business if it's not Flagstar." In his declaration in opposition to the motion for summary judgment, however, Nguyen stated that one of Integrity's major referral sources, referred to only as "OCWEN," stopped referring all escrow business to Integrity "[b]ecause Flagstar Bank published on the worldwide web that Integrity Escrow was 'Ineligible' to serve as an Escrow Agent in California." (Some capitalization omitted.) Nguyen further stated that OCWEN had stopped making any referrals to Integrity, including those where Flagstar was not the lender. Flagstar's objections to this paragraph from Nguyen's declaration, based on speculation, lack of personal knowledge, lack of foundation, and contradiction of previous testimony, were sustained. Integrity does not make any specific argument regarding this evidentiary ruling on appeal, other than to generally argue that the trial court strictly construed Integrity's declarations. Integrity has failed to show the trial court abused its discretion in sustaining Flagstar's objections to this evidence.

13

require that the borrower be given the right to choose the escrow company. There is a form supplied and used in almost every residential loan transaction and sale transaction, which contains the requirements. [Attached hereto as Exhibit '2' is a true and correct copy of the standard form.] By intentionally excluding [Integrity] from escrow transactions, it is my opinion that Flagstar Bank is engaging in a violation of RESPA Regulations. [Title 24, CFR Section 3500, Appendix C.]" (Some capitalization omitted.)

Integrity failed to raise a triable issue of material fact regarding an alleged violation of RESPA. The settlement service provider list attached to the declaration of Integrity's expert witness does not create an obligation on the part of a lender to permit a borrower to use any escrow agent of the borrower's choosing. The form advises the borrower of the contact information for various providers of settlement services being recommended by the loan originator, and advises the borrower that it is not required to use those service providers. (The types of providers listed on the form are title insurance and settlement agent; survey; and pest inspection.) Integrity did not identify any specific section of title 12 of the United States Code, or any specific part of title 24 of the Code of Federal Regulations, which creates an inalienable right of the borrower to select the escrow agent to be used in a mortgage transaction if the lender with whom the borrower wishes to work refuses to do business with that escrow agent. Indeed, Integrity does not pursue this argument on appeal, other than to quote the expert witness's declaration in both its opening and reply briefs. Without any further explanation or analysis, Integrity failed to meet its burden in opposition to the summary judgment motion.[8]

_____

[8] As with the intentional interference with contractual relations claim, Flagstar argues summary judgment was proper on the intentional interference with prospective economic advantage claim because Flagstar showed Integrity could not establish the element of intent, and Integrity failed to offer admissible evidence raising a triable issue of material fact. And, as with the intentional interference with contractual relations claim, we need not reach this issue because of our holding that Flagstar established there was no triable issue of material fact as to other necessary elements of the claim.

14

## IV.

*UNFAIR BUSINESS PRACTICES*

The evidence does not support an unfair business practices claim. In its second amended complaint and in briefing in the trial court and on appeal, Integrity referred to several different statutes as the basis for its unfair business practices claim. Under Business and Professions Code section 17200, "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code [(which involves advertising)]." The purpose of section 17200 is to protect consumers and competitors against the creation or perpetuation of monopolies and to promote fair competition. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 179.) "'Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent.'" (*Id.* at p. 180.)

The evidence established that Flagstar did not violate any law. The evidence also established Flagstar did not act fraudulently. As used in Business and Professions Code section 17200, a fraudulent act is one that would be likely to deceive members of the public. (*Daugherty v. American Honda Motor Co., Inc.* (2006) 144 Cal.App.4th 824, 838.) The evidence established the statements on Flagstar's Web site and to Optimum, regarding Integrity's ineligible status, were true, and, therefore, even if they were disseminated to the public, they would not have deceived anyone. Finally, the evidence showed that Flagstar's actions were not unfair, within the meaning of section 17200. Because Flagstar had a legitimate business reason for placing Integrity on its ineligible list, Integrity's claim under the unfairness prong of section 17200 failed. (*Family Home and Finance Ctr. v. Federal Home Loan*, *supra*, 525 F.3d at p. 826.)

15

Integrity failed to offer admissible evidence creating a triable issue of material fact as to any prong of the section 17200 test.

Integrity also raised its unfair business practices claim under Business and Professions Code section 17046, which makes it "unlawful for any person to use any threat, intimidation, or boycott, to effectuate any violation of this chapter." Flagstar offered evidence that it did not threaten, intimidate, or boycott anyone; to the contrary, Flagstar offered evidence that Integrity continued to do business with Optimum as well as other mortgage brokers. Integrity did not create a triable issue of material fact as to any alleged threats, intimidation, or boycotts.

Finally, Integrity alleged its unfair business practices claim arose under Business and Professions Code section 17500, which prevents false advertising. Flagstar established it had not done any advertising, and Integrity failed to offer admissible evidence to create a triable issue of material fact as to any advertising, false or otherwise, by Flagstar.

## V.

### *DEFAMATION*

As explained *ante*, Flagstar met its initial burden to establish one or more of the elements of Integrity's cause of action for defamation could not be proven. Integrity failed to demonstrate a triable issue of material fact in opposition to the motion for summary judgment. Therefore, the trial court properly determined Flagstar was entitled to summary judgment on this cause of action as well.

## VI.

### *DECLARATIONS OF GUY PUCCIO AND KOLP*

Integrity argues the declarations of Flagstar's expert witness, Guy Puccio, and Kolp should have been excluded in their entirety. In its written evidentiary

16

objections, Integrity argued the Puccio declaration should be excluded in its entirety because, in reaching his opinions, Puccio relied on the first amended complaint and on an earlier version of the Kolp declaration. If the bases for an expert witness's opinions are faulty, that goes to the weight of the opinions, not their admissibility. The trial court did not abuse its discretion in denying Integrity's request to strike the Puccio declaration.

In the trial court, Integrity did not move to strike Kolp's declaration in its entirety. Integrity fails to provide any grounds for doing so on appeal. Rather, Integrity challenges the correctness of the statements in Kolp's declaration and attacks her credibility. These challenges do not make Kolp's declaration inadmissible, however, nor do they affect the propriety of the order granting summary judgment. (See Code Civ. Proc., § 437c, subd. (e) ["summary judgment may not be denied on grounds of credibility"]; *Trujillo v. First American Registry, Inc.* (2007) 157 Cal.App.4th 628, 632.). We find no grounds for refusing to consider Kolp's declaration.

In opposition to the motion for summary judgment, Integrity's specific objections to the Puccio and Kolp declarations were numerous and generally inapplicable. As but one example, Integrity objected to Puccio's declaration that he was the author or editor of certain real-estate-related books as lacking sufficient foundation and personal knowledge, and being speculative, based on hearsay, overbroad, compound, and vague and ambiguous. On appeal, Integrity fails to point to a single item of evidence and explain why the trial court abused its discretion in overruling Integrity's objection to that evidence. Integrity has failed to establish any error in the trial court's evidentiary rulings.

Integrity asks us to strike the unpublished opinions from other jurisdictions cited in Flagstar's respondent's brief, and to strike those cases and authorities cited in the respondent's brief that were not cited in Flagstar's memorandum of points and authorities in support of the motion for summary judgment. In addition to violating California Rules of Court, rule 8.54 (which requires all motions in a reviewing court to be accompanied by

17

a separate memorandum), Integrity's requests are without merit.  While unpublished California opinions generally may not be cited or relied upon (Cal. Rules of Court, rule 8.1115(a)), this rule does not apply to cases from other jurisdictions.  Further, while a party may generally not raise new theories or arguments for the first time on appeal, this does not prevent a party from providing additional authority (especially newly decided cases) that bolster the arguments previously raised in the trial court.  Integrity fails to show that any of the cases cited by Flagstar for the first time on appeal addresses wholly new issues that were not raised in the trial court.

DISPOSITION

The judgment is affirmed.  Respondent to recover costs on appeal.

FYBEL, J.

WE CONCUR:

O'LEARY, P. J.

BEDSWORTH, J.

18