Filed 11/19/13  Complete Escrow Service v. Flagstar Bank CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| COMPLETE ESCROW SERVICE CORPORATION,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>FLAGSTAR BANK, FSB,<br><br>    Defendant and Respondent. | G047905<br><br>(Super. Ct. No. 30-2011-00449134)<br><br>O P I N I O N |

        Appeal from a judgment of the Superior Court of Orange County, Franz E. Miller, Judge.  Reversed with directions.

        Stocker & Lancaster and Michael J. Lancaster for Plaintiff and Appellant.

        Palmer, Lombardi & Donohue, Roland P. Reynolds and Alison R. Kalinski for Defendant and Respondent.

                        *        *        *

Mortgage lender Flagstar Bank, FSB (Flagstar), decided in early 2011 to make licensed escrow agent Complete Escrow Service Corporation (Complete) ineligible to do business with Flagstar. Flagstar included Complete's name on a list of ineligible escrow agents; the list was made available to the mortgage brokers with whom Flagstar does business. Flagstar also told one mortgage broker that Flagstar had "blacklisted" Complete.

Complete sued Flagstar for intentional interference with contractual relations and with prospective economic advantage, unfair business practices, and defamation. The trial court entered a stipulated summary judgment in favor of Flagstar. With respect to the first cause of action for intentional interference with contractual relations, Complete showed the existence of a triable issue of material fact as to the elements of Flagstar's knowledge of and intent to induce the breach of three executed escrow agreements. As a result, the cause of action for intentional interference with contractual relations survives summary judgment. We conclude, however, that there was no triable issue of material fact as to Complete's second and fourth causes of action for intentional interference with prospective economic advantage and defamation because the evidence shows Flagstar's actions were privileged, and Complete failed to show malice. We further conclude there was no triable issue of material fact as to the third cause of action for unfair business practices.

We therefore reverse the judgment with directions to the trial court to (1) deny Flagstar's motion for summary judgment, (2) deny Flagstar's motion for summary adjudication of the first cause of action for intentional interference with contractual relations, and (3) grant Flagstar's motion for summary adjudication of the second, third, and fourth causes of action for intentional interference with prospective economic advantage, unfair business practices, and defamation, respectively. We note that, given Complete's evidence that it would have realized $560 on each closed escrow,

2

the total potential compensatory damages available to Complete on the cause of action for interference with contract are $1,680 for the three escrow agreements with which Flagstar allegedly interfered.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

Flagstar is a federal savings bank and mortgage lender, based in Troy, Michigan. It funds residential mortgage loans secured by properties in California, as well as in other states. Flagstar enters into agreements with mortgage brokers, allowing those brokers to submit loan applications on behalf of the brokers' borrower-clients. If approved, Flagstar makes loans directly to the borrower-clients. The mortgage loan transactions are completed by escrow agents. Flagstar maintains a list of eligible escrow agents with which it will do business, as well as a list of ineligible escrow agents with which it will not do business. Flagstar maintains these lists to minimize its risk of exposure to fraudulent transactions. The lists of eligible and ineligible escrow agents are available on Flagstar's password-protected Web site, and can only be viewed by Flagstar employees and Flagstar-approved mortgage brokers.

Complete is an escrow agent licensed to do business in the State of California. Before January 2011, Complete was on the list of escrow agents eligible to do business with Flagstar.

Optimum First Mortgage (Optimum) is a mortgage broker. Optimum and Complete had an oral agreement that Optimum would refer escrow business to Complete. Flagstar began an investigation of Optimum when it discovered an altered employment verification in a loan application (which verification was ultimately proven to be false) and unexplained cash payments. Flagstar reviewed 20 loans brokered by Optimum, all of which had used either Complete or Integrity Escrow, Inc. (Integrity), as the escrow agent. During the investigation, Complete's status was changed from eligible to ineligible to do business with Flagstar.

3

During Flagstar's investigation, Jennifer Kolp, Flagstar's vice-president and manager for the financial investigations unit, made findings that caused her to determine that the level of risk of continuing to do business with Complete was too high. Those findings included (1) Complete lacked sufficient internal controls; (2) one of Complete's escrow officers was potentially not qualified; (3) Complete had employed an escrow officer who had previously been employed by an escrow company that had closed under allegations of embezzlement and other inappropriate activity; and (4) the executives in charge of Complete appeared to be disconnected from the company's daily operations. Therefore, Kolp determined that Complete's status should remain as ineligible.

Following the investigation, Kolp decided not to change Complete's status from ineligible back to eligible. Flagstar updated its Web site to reflect Complete's ineligible status. On January 19, 2011, Flagstar advised Optimum that Complete's status had been changed to ineligible, and further advised Optimum that it would not fund any loans on which Complete was the escrow agent. As of that time, Complete had been referred by Optimum as the escrow agent for 20 mortgage loans that were going to be funded by Flagstar. Each of those escrows was transferred from Complete to another escrow agent. Complete would have realized a fee of $560 on each of those escrows, for a total claimed loss of $11,200.

Complete also claimed damages for other escrow business it did not receive from Optimum because Optimum was seeking to obtain funding from Flagstar and, therefore, could not use Complete as the escrow agent due to its ineligible status with Flagstar. Complete also claimed that, more than a year after Flagstar changed Complete's status to ineligible, one of its escrow officers resigned, due to the loss of business from one mortgage broker that would not refer escrows to Complete because Flagstar would not work with Complete.

4

Complete sued Flagstar for intentional interference with contractual relations, intentional interference with prospective economic advantage, unfair business practices, and defamation. Flagstar moved for summary judgment or, in the alternative, summary adjudication of all of the causes of action. The trial court denied the motion for summary judgment, but granted the motion for summary adjudication of the causes of action for intentional interference with prospective economic advantage and defamation. The parties stipulated to the entry of summary judgment in order to hasten the appeal, obtain review of the issues, and preserve resources. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383.) Judgment was entered, and Complete timely appealed. (Integrity also sued Flagstar, and Flagstar also filed a motion for summary judgment against Integrity's causes of action. The judgment entered against Integrity is the subject of a separate appeal, *Integrity Escrow, Inc. v. Flagstar Bank, FSB*, No. G047937.)

DISCUSSION

I.

*STANDARD OF REVIEW*

We review an order granting summary judgment de novo. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767; *Village Nurseries v. Greenbaum* (2002) 101 Cal.App.4th 26, 35.) A motion for summary judgment is properly granted if the moving papers establish there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.) "To prevail on the motion, a defendant must demonstrate the plaintiff's cause of action has no merit. This requirement can be satisfied by showing either one or more elements of the cause of action cannot be established or that a complete defense exists. [Citations.] If the defendant meets this requirement, the burden shifts to the plaintiff to demonstrate a triable issue of material

5

fact exists. [Citations.]" (*We Do Graphics, Inc. v. Mercury Casualty Co*. (2004) 124 Cal.App.4th 131, 135-136.)

The summary judgment is appealable, despite the parties' stipulation to its entry. The parties' stipulation makes clear that it was entered, not to settle their dispute fully and finally, but rather to facilitate an appeal following an adverse determination on a critical issue. Therefore, the rule that a party may not appeal from a consent judgment does not apply. (*Norgart v. Upjohn Co.*, *supra*, 21 Cal.4th at pp. 400-401.) Additionally, the doctrine of invited error does not bar either party from raising any arguments on appeal. (*Id.* at pp. 402-403.)

We review the trial court's evidentiary rulings for abuse of discretion. (*Ceja v. Department of Transportation* (2011) 201 Cal.App.4th 1475, 1481.)

II.

*INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS*

"The elements of a cause of action for interference with contractual relations are: (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of this contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damages. [Citation.] Proof the interfering conduct was wrongful, independent from the interference itself, is not required to recover for interference with contractual relations. [Citation.]" (*Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 237-238.)

A. *Existing Escrow Instructions*

In its second amended complaint, Complete alleged Flagstar interfered with 20 pending escrows, identifying each by number and the name of the potential borrower. The complaint alleged a single cause of action for interference with all 20 escrows.

6

Therefore, in order to obtain judgment on this cause of action based on the lack of a valid, enforceable contract, Flagstar was required to disprove the validity or existence of all 20 alleged escrow instructions.

In its motion for summary judgment, Flagstar established that there were not valid, enforceable contracts for 17 of those 20 escrows because there was no signed escrow agreement or escrow instructions. Flagstar failed to establish the lack of signed escrow agreements or instructions with respect to the three other escrows identified in the second amended complaint. Flagstar's motion papers simply failed to address those three escrows. While Flagstar's counsel's declaration attached unsigned escrow agreements or instructions for 17 escrows, Flagstar made no mention of the three other escrows in its separate statement or otherwise.

Carol Blain, Complete's president, testified at her deposition that signed escrow instructions existed for at least two of the three escrows Flagstar failed to address; this deposition testimony was offered by Flagstar in support of its motion for summary judgment, not by Complete in its opposition papers.

In opposition to the motion for summary judgment, Complete's counsel submitted a declaration in which he stated that he had caused the production to Flagstar of the files for all 20 of the escrows identified in Complete's complaint: "Flagstar requested that Plaintiffs in both cases produce all escrow instructions for all of the borrowers listed in paragraph 7 of the First Amended Complaint. In fact, I produced all escrow instructions. This consisted of the 20 escrow files for Complete Escrow . . . . I am the one who arranged for the production and service on [Flagstar's counsel] by personal service using DDS Attorney Service." (Some capitalization omitted.) In neither its motion papers nor reply papers did Flagstar ever counter or challenge Complete's counsel's contention that the entire files for all 20 of the cancelled escrow instructions had been produced, or explain why it had not offered any evidence relating to three of the

7

20 escrows. For purposes of summary judgment, Flagstar failed to disprove the element of the existence of a valid contract as to the three remaining sets of escrow instructions.

### B. *Parties to the Escrow Instructions*

Flagstar argues that it cannot be liable for intentional interference with contractual relations because it was a party to, or had a direct interest and involvement in, the escrow instructions. As the California Supreme Court has explained: "[C]onsistent with its underlying policy of protecting the expectations of contracting parties against frustration *by outsiders* who have no legitimate social or economic interest in the contractual relationship, the tort cause of action for interference with a contract does not lie against a party to the contract. [Citations.] [¶] . . . One contracting party owes no general tort duty to another not to interfere with performance of the contract; its duty is simply to perform the contract according to its terms. The tort duty not to interfere with the contract falls only on strangers—interlopers who have no legitimate interest in the scope or course of the contract's performance." (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 514.)

Flagstar is not a party to the escrow instructions; the parties are Complete and the borrowers.[1] Flagstar argues that because of Complete's role as a fiduciary in the escrow process, the different agreements involved in an escrow become parts of one whole contract, to which both Complete and Flagstar would be parties. It is true that "[a]n escrow holder is an agent and fiduciary of the parties to the escrow." (*Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co.* (2002) 27 Cal.4th 705, 711; see *Virtanen v. O'Connell* (2006) 140 Cal.App.4th 688, 702-703; *Kangarlou v.*

---

[1] The only escrow instructions we are considering at this point are the three escrow instructions that Flagstar failed to prove had not been signed. These allegedly signed escrow instructions, however, are not included in the appellate record. We have reviewed the unsigned escrow instructions for the other 17 escrows to determine the likely terms of the signed escrow instructions.

*Progressive Title Co., Inc.* (2005) 128 Cal.App.4th 1174, 1179.) Flagstar fails to explain, however, how a fiduciary duty Complete may have owed to Flagstar can make Flagstar a party to contracts between Complete and the borrowers.

"Courts appear to distinguish between *escrow* instructions and *closing* instructions. 'Escrow instructions' are considered an agreement between the escrow holder and the parties to the escrow (e.g., buyer and seller). 'Closing instructions' constitute a separate contract between the escrow holder and a party's lender setting out the terms and conditions for closing the lender's loan as well as the escrow holder's duties and responsibilities in connection with closing the loan, separate and apart from closing the escrow. Where the escrow instructions direct the escrow holder to comply with lender closing instructions, and the escrow holder has agreed to abide by the lender's closing instructions in closing a loan involved in the escrow, the escrow holder's duties will be dictated by both instructions, although different standards may apply." (3 Miller & Starr, Cal. Real Estate (3d ed. 2010) § 6:12, fns. omitted; see *Plaza Home Mortgage, Inc. v. North American Title Co., Inc.* (2010) 184 Cal.App.4th 130, 136; *Money Store Investment Corp. v. Southern Cal. Bank* (2002) 98 Cal.App.4th 722, 728.) The unsigned escrow instructions included in the appellate record make reference to separate instructions by the lender. For purposes of the motion for summary judgment, the record shows the transaction by which the borrower financed or refinanced a loan had (or would have had) at least two separate contracts—escrow instructions between the borrower and the escrow agent, and closing instructions between the escrow agent and Flagstar. There are no closing instructions in our appellate record.

Flagstar next argues that the closing instructions from Flagstar to the escrow agent would constitute a contract, which Complete does not appear to refute. However, Flagstar extrapolates from there that because it was a party to a contract with the escrow agent, it cannot be liable for inducing a breach of a different contract between the escrow agent and the borrower. We reject Flagstar's unsupported leap in logic.

Flagstar relies on the declaration of its expert witness, Guy Puccio, for the proposition that the lender is a principal in a real estate sale escrow, and that all documents involved in the real estate sale are essential to the escrow.[2] We find no fault in these opinions, but conclude they do not support an inference that the lender thus becomes a party to the escrow instructions between the borrower and the escrow agent, or that the lender's closing instructions and the escrow instructions become a single contractual document.

Finally, Flagstar relies on several federal cases for the proposition that it cannot be liable for interference with contractual relations because it has a direct interest and involvement in the escrow relationship between the escrow agent and the borrower. We find each of these cases to be distinguishable. In *Marin Tug & Barge v. Westport Petroleum* (9th. Cir. 2001) 271 F.3d 825, 834, the federal appellate court found that Shell Oil Products Company was not a stranger to a prospective economic relationship between Marin Tug & Barge, Inc., and buyers of Shell Oil products because "Shell and Marin Tug had a mutual economic interest in delivering the oil safely and cleanly, and were dependent upon each other to do so." The same type of mutual economic interest and codependence does not exist between Flagstar and the escrow agents involved in the loans Flagstar funds. In *National Rural Telcomm. Co-op v. DIRECTV* (C.D.Cal. 2003) 319 F.Supp.2d 1059, 1068-1073, the court found that a third party beneficiary to a contract could not be liable for interfering with that same contract. In *ViChip Corp. v. Lee* (N.D.Cal. 2006) 438 F.Supp.2d 1087, 1097-1098, the court found that a joint venture, established by means of a joint venture agreement, could not be liable as a matter of law for intentionally interfering with the joint venture agreement. Flagstar is

---

[2] Complete's objections to this portion of Puccio's declaration were overruled. Complete does not argue on appeal that the trial court abused its discretion in this evidentiary ruling.

10

neither a third party beneficiary of, nor a joint venture created by, the contractual relationship between Complete and the borrowers.

We conclude, based on the record before us, that Flagstar failed to meet its initial burden to show it was a party to the contracts with which it allegedly interfered, and that it was not entitled to summary judgment or summary adjudication on that issue.

In its motion for summary judgment, Flagstar also argued that the elements of knowledge of the existence of a contract and intent to disrupt that contract could not be established. Kolp, who decided to make Complete ineligible as an escrow agent, testified she "had no idea what else was going on with Complete Escrow and their other business" at the time she made that decision. In opposition, Complete offered evidence that, as of February 1, 2011, Kolp was aware of the pending escrows that had been in existence. This does not establish that, as of the unspecified date in January 2011, when the decision was made to list Complete as ineligible, Kolp was aware of the escrows Complete had pending.

However, Complete offered into evidence the declaration of an Optimum employee that, on January 19, 2011, Flagstar "instructed [Optimum] to switch all of [its] current escrows with Complete Escrow . . . to another escrow company." It is reasonable to infer from that statement that Flagstar knew of the existence of Complete's signed escrow agreements and intended to disrupt them. (*McGrory v. Applied Signal Technology, Inc.* (2013) 212 Cal.App.4th 1510, 1529-1530 [inference must be reasonable to raise triable issue of material fact on summary judgment].) We acknowledge this evidence barely satisfies the standard. Our decision is without prejudice to Flagstar's showing in a later motion or at trial that valid, signed contracts do not exist for the three remaining escrows identified in Complete's second amended complaint. Obviously, if Flagstar had addressed all 20 of the escrows referenced in that complaint in its motion papers, both the trial court and this court would have had a better record on which to decide the case.

11

For these reasons, Flagstar was not entitled to summary judgment or summary adjudication on the first cause of action for intentional interference with contractual relations.

## III.

### *INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE*

"The elements of a cause of action for interference with prospective economic advantage are: (1) an economic relationship between the plaintiff and a third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional and wrongful conduct designed to interfere with or disrupt this relationship; (4) interference with or disruption of this relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's wrongful conduct. [Citation.] [¶] To establish intentional interference with prospective economic advantage, a plaintiff must plead and prove the defendant 'engaged in conduct that was wrongful by some legal measure other than the fact of interference itself.' [Citation.] An act is independently wrongful 'if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard.' [Citation.]" (*Sole Energy Co. v. Petrominerals Corp.*, *supra*, 128 Cal.App.4th at p. 241.)

In its cause of action for intentional interference with prospective economic advantage, Complete alleged Flagstar interfered with its prospective contracts with the 20 escrows identified *ante*, as well as Complete's relationship with Optimum, which allegedly refused to do business with Complete after it was placed on Flagstar's ineligible list. The independently wrongful conduct alleged by Complete was (1) informing escrow customers and mortgage brokers that Complete was ineligible to serve as an escrow agent on loans funded by Flagstar, or that Complete was blacklisted, and (2) prohibiting escrow

12

customers and loan brokers from completing escrow agreements with Complete if they wanted Flagstar to fund the loan.

Complete did not offer any admissible evidence disputing Flagstar's argument that, in the absence of any contractual arrangement between Flagstar and Complete, Flagstar had the right to decide with whom it would do business. (See *Kasparian v. County of Los Angeles* (1995) 38 Cal.App.4th 242, 266 ["If a party has no liability in tort for refusing to perform an existing contract, no matter what the reason, he or she certainly should not have to bear a burden in tort for refusing to *enter into* a contract where he or she has no obligation to do so"]; *Overland P. Co. v. Union L. Co.* (1922) 57 Cal.App. 366, 370-371 ["It is the right of every man to engage to work for or to deal with, or to refuse to work for or to deal with, any man or class of men as he sees fit, whatever his motive or whatever the resulting injury, without being held in any way accountable therefor. [Citations.] These rights may be exercised in association with others so long as they have no unlawful object in view"]; *Klamath-Lake Pharm. v. Klamath Med. Serv. Bureau* (9th Cir. 1983) 701 F.2d 1276, 1292 [business arrangement "was simply an exercise of its freedom to contract with whomever it chose in order to sustain itself in the marketplace"]; *Klamath-Lake Pharm.*, *supra*, at p. 1292, fn. 16 ["This freedom extends to the manufacturer who for any lawful reason terminates one distributor or supplier and puts another in its place, even if the terminated businessman is put out of business"].)

Complete admits the truth of this rule of law in its opening brief on appeal, where it asserts: "You can cho[o]se not to do business with someone. However, you cannot tell everyone in the neighborhood they can't do business with the person you chose not to do business with." The fallacy in Complete's argument is that Complete failed to offer any admissible evidence that Flagstar told anyone not to do business with Complete. The undisputed evidence shows that Flagstar advised mortgage brokers, including, but not limited to, Optimum, that Flagstar would no longer do business with

13

Complete. Any mortgage broker remained free to use Complete as an escrow agent, as long as the loan was to be funded by a company other than Flagstar. Alternatively, a mortgage broker who desired to have Flagstar fund a loan would be required to select an escrow agent other than Complete.[3] Nothing in the appellate record even hints that Flagstar was the only lender making the types of loans involved here. The undisputed evidence shows that Complete did not lose any business as the escrow agent on mortgage loans funded by lenders other than Flagstar. Therefore, Flagstar's identification of Complete as an ineligible escrow agent was not independently wrongful conduct.

Complete claimed that the independent wrongful conduct was Flagstar's alleged defamation and violation of the Real Estate Settlement Procedures Act of 1974, 12 United States Code section 2601 et seq. (RESPA).

### A. *Alleged Defamation*

"The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." (*Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1369; see *Taus v. Loftus* (2007) 40 Cal.4th 683, 720; Civ. Code, §§ 44, 45, 45a, 46, 47.) Complete failed to offer admissible evidence creating a triable issue of material fact as to the falsity or lack of privilege in Flagstar's publications, whether verbal or on its Web site.

### 1. *Falsity*

The publication of Complete's name on the ineligible list rather than on the eligible list was not false, and Complete did not dispute that material fact. Truth is an

---

[3] This is not inconsistent with Complete's claim that a borrower has the right to decide which escrow agent to choose. The borrower's right to choose an escrow agent does not force any other party—including, but not limited to, the lender—not wishing to do business with a particular escrow agent to participate in the transaction. The borrower has the choice to do business with the lender or with the escrow agent if one refuses to do business with the other.

14

absolute defense to a defamation claim. (*Ringler Associates Inc. v. Maryland Casualty Co.* (2000) 80 Cal.App.4th 1165, 1180.) On appeal, Complete argues that placing it on the ineligible list was untruthful because only the California Department of Corporations can make Complete ineligible to serve as an escrow agent. Flagstar's Web site only identifies which escrow agents are eligible or ineligible "to handle Flagstar mortgage loan transactions." Complete did not offer any evidence that Flagstar's Web site said anything other than that Complete was not eligible to handle Flagstar loans. Optimum's president testified that Flagstar's list of approved escrow agents meant "you can do business with these escrow companies if you choose to take a loan to Flagstar Bank."

Matthew Dohman, an officer of Optimum, submitted a declaration in opposition to Flagstar's motion for summary judgment, reading in relevant part as follows: "Tim Kearney is employed by Flagstar Bank. He is the Flagstar Bank Account Executive for Optimum First Mortgage. [¶] . . . On January 19, 2011, I received a call from Tim Kearney at approximately 3:00 p.m. During the call, Tim Kearney stated to me that Flagstar Bank had audited about twenty (20) Optimum loan files. He said that Flagstar Bank had Blacklisted[4] both Complete Escrow and Integrity Escrow, and instructed me to switch all of our current escrows with Complete Escrow and Integrity Escrow to another escrow company. He said Complete Escrow and Integrity Escrow were no longer eligible to act as escrow agents on any Flagstar Bank loans. [¶] . . . [¶] . . . I asked Tim Kearney if he knew the reason Flagstar Bank was Blacklisting Complete Escrow and Integrity Escrow. He said he did not. He said he was just instructed to inform me of the action taken by Flagstar Bank and to make it clear that Flagstar Bank would not allow any loans to close if we used Complete Escrow or Integrity Escrow. [¶] . . . I asked Tim Kearney about the status of Complete Escrow and Integrity Escrow

---

[4] Webster's Third New International Dictionary (2002) at page 227, column 1, defines a "blacklist" as "a list of persons that are disapproved of or are to be punished or discriminated against."

15

several times during 2011. I asked why they are listed as 'ineligible' and if there had been any change. Each time Tim Kearney advised me he still does not know any reasons, and they are both still listed on Flagstar Bank[']s website as 'ineligible' escrow agents."

## 2. *Privilege*[5]

Civil Code section 47, subdivision (c) provides, in relevant part: "A privileged publication or broadcast is one made: [¶] . . . [¶] (c) In a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent . . . ."

To determine the applicability of the common interest privilege as a defense to defamation, the defendant (in this case, Flagstar) bears the burden of proof on the issue of the existence of the privilege, and the plaintiff (here, Complete) bears the burden of proof on the existence of malice. (*Lundquist v. Reusser* (1994) 7 Cal.4th 1193, 1205-1213.) Flagstar met its burden of proving it had a common interest with those who heard or read its allegedly defamatory statements. Flagstar had a common interest with Optimum and the other mortgage brokers that had access to Flagstar's Web site listing the escrow agents with which it would do business; the process of residential mortgage approval and funding will be expedited and more cost efficient if the mortgage broker

---

[5] Complete argues that Flagstar never alleged the common interest privilege as an affirmative defense. To the contrary, Flagstar's 34th affirmative defense reads: "Defendant is informed and believes and thereon alleges that Plaintiff cannot recover for defamation because the alleged statements were privileged." Complete's unsupported contention that "[a] general allegation of privilege is not sufficient" to avoid waiver of the affirmative defense is incorrect. The rule requiring that the specific statute of limitations be alleged by reference to the applicable code section and subdivision does not apply to other affirmative defenses, such as privilege. (See *Hata v. Los Angeles County Harbor/UCLA Medical Center* (1995) 31 Cal.App.4th 1791, 1805-1806.) Given the causes of action alleged in the operative complaint and the wording of the affirmative defenses, there is no uncertainty as to what type of privilege was being asserted, and as against which cause of action.

working with a borrower-client is aware of which combination of lender and escrow agent will be able to complete the process together.

Flagstar was entitled to refuse to do business with any entity it believed would subject it to a risk of financial or reputational harm, and well-settled law supports this conclusion. (*Family Home and Finance Ctr. v. Federal Home Loan* (9th Cir. 2008) 525 F.3d 822, 827 [common interest privilege defeats defamation claim by mortgage broker against Federal Home Loan Mortgage Corporation (Freddie Mac); Freddie Mac placed mortgage broker on exclusionary list, which was published "only to its lenders, with whom it shares a business relationship and common interest in dealing with investment quality loans"]; *Walton v. Freddie Mac (FHLMC)* (S.D.Ind., Mar. 22, 2013, No. 3:12-cv-00116-RLY-WGH) 2013 U.S.Dist. Lexis 40049, p. *7 [letter from Freddie Mac advising appraisal management company that Freddie Mac would place it on an exclusionary list was "nothing more than [a] standard business letter[] issued by Freddie Mac when it has cause to believe that doing business with a particular business will subject it to an undue risk of harm"]; *Prime Time Mortgage, Co. v. Flagstar Bank, FSB* (S.D. Ohio, May 4, 2005, No. 3:03-cv-337) 2005 U.S.Dist. Lexis 9354, p. *6 [Flagstar published to Mortgage Asset Research Institute (MARI) that the plaintiff had misrepresented the appraised value of a property; qualified privilege defeats defamation claim because Flagstar and MARI shared interest of providing mortgage professionals with whom they both do business information to prevent fraud].)

In addition, Complete failed to meet its burden of establishing the existence of malice. In the context of the common interest privilege, malice is not inferred from the communication; rather, Complete was required to establish actual malice by showing that Flagstar's statements were motivated by hatred of or ill will towards Complete. (*Noel v. River Hills Wilsons, Inc.* (2003) 113 Cal.App.4th 1363, 1370.)[6] Flagstar offered evidence

_____

[6] Malice may also be established through proof that the defendant lacked reasonable grounds for a belief in the truth of its statements and therefore acted in

that Kolp changed Complete's status from eligible to ineligible because of irregularities discovered during an investigation, which caused Kolp "to determine that the level of risk with Complete Escrow was too high." Flagstar also offered evidence that the president of Complete did not have any reason to believe that Flagstar decided to change Complete's status due to hatred, an evil intention, or an evil motive.

In opposition, Complete submitted evidence that Kolp learned of the escrows Complete had in process when she received a letter from Complete's counsel, *after* the decision had been made to place Complete on the ineligible list; that Kolp intentionally placed Complete on the ineligible list; that other Flagstar employees were unaware of Kolp's reasons for placing Complete on the ineligible list; and that Flagstar had no justification or legal cause to change Complete's status from eligible to ineligible. None of the evidence to which Complete points establishes a triable issue of material fact that Flagstar acted with actual malice in placing Complete on the ineligible list. (Complete also submitted the declaration of its counsel of record, who opined that Kolp had only "lame excuses" for placing Complete on the ineligible list. Counsel's opinions, rather than admissible evidence, are insufficient to meet Complete's burden on summary judgment.)

### 3. *Injury*

Blain, Complete's president, testified in her deposition that Optimum continued to refer business (other than Flagstar business) to Complete after January 2011; Optimum had a good relationship with Complete; Optimum would probably continue to refer business to Complete in the future; Flagstar never told Optimum that it could not use Complete to close non-Flagstar loans; and Complete did not lose any business other

---

reckless disregard for the plaintiff's rights. (*Noel v. River Hills Wilsons, Inc.*, *supra*, 113 Cal.App.4th at p. 1370.) Because there is no dispute as to the truth of Flagstar's statements (i.e., Complete was ineligible to process escrows on Flagstar's loans), Flagstar could not have lacked reasonable grounds for a belief in their truth.

than business from Flagstar. In particular, she testified in her deposition as follows regarding business with lenders other than Flagstar:

"Q Right. I meant, you know—I understand you can't do the business when they're Flagstar loans, you know?

"A Okay.

"Q But I'm talking about any other business you didn't get that were not Flagstar loans.

"A No. Why would we lose—no."

Blain further testified as follows:

"Q I understand you might not know that you lost business if it was never presented to you.

"A Yes.

"Q Same as anyone would. [¶] But I'm asking you if you know, for example, let's say Citibank or CitiMortgage said, 'Oh, you know what? We heard that you're ineligible. We're not giving you any business.' Are you aware of anything like that happening?

"A No.

"Q Okay. Can you identify any—are there any specific lenders that you're aware of that won't refer business to Complete?

"A No.

"Q Or any mortgage brokers?

"A No.

"Q Or real estate agents?

"A No."[7]

_____

[7] Despite her deposition testimony (in evidence on the subject motions), Blain submitted a declaration in opposition to the motion for summary judgment, in which she stated: "These losses [of escrow fees] are continuing, including the loss of escrow

19

B. *Alleged Violation of RESPA*

With regard to the alleged RESPA violation, Complete's expert witness on escrow practices declared: "[I]t is not an industry practice for institutional mortgage lenders to maintain a 'blacklist' or 'exclusionary list' applicable to escrow companies. Many lenders and other companies have 'preferred lists[,'] which are companies they have prior experience doing business with. These are established business relationships just like the one between [Complete] and Optimum First Mortgage. Flagstar Bank does not have the right to exclude any licensed escrow company in the State of California from any escrow transaction. In fact, Flagstar Bank does not have the right to choose or direct who the escrow company will be. With respect to residential loans, RESPA and HUD require that the borrower be given the right to choose the escrow company. There is a form supplied and used in almost every residential loan transaction and sale transaction, which contains the requirements. [Attached hereto as Exhibit '2' is a true and correct copy of the standard form.] By intentionally excluding [Complete] from escrow transactions, it is my opinion that Flagstar Bank is engaging in a violation of RESPA Regulations. [Title 24, CFR Section 3500, Appendix C.]" (Some capitalization omitted.)

Complete failed to raise a triable issue of material fact regarding an alleged violation of RESPA. The settlement service provider list attached to the declaration of Complete's expert witness does not create an obligation on the part of a lender to permit a

_____

business from the following clients of Complete Escrow for loans to be funded by Flagstar Bank and loans to be funded by other lenders: Spectrum One Mortgage, Touchdown Lending, First Choice, Dave Financial, Golden Empire Mortgage, Realty Source, Prudential California, Omni-Fund, Inc., Oak Tree Home Loans, Century 21 Awards, Tara Tan Realty, A-Plus Realty and Mortgage, South Hills Properties, Bank of America and Wells Fargo." (Some capitalization omitted.) A party cannot create a triable issue of material fact by submitting a party declaration in opposition to a motion for summary judgment, which directly contradicts party admissions made during discovery. (*Shin v. Ahn* (2007) 42 Cal.4th 482, 500, fn. 12; *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21-22.)

20

borrower to use any escrow agent of the borrower's choosing. The form advises the borrower of the contact information for various providers of settlement services, which are being recommended by the loan originator, and advises the borrower that it is not required to use those service providers. (The types of providers listed on the form are title insurance and settlement agent; survey; and pest inspection.) Complete did not identify any specific section of title 12 of the United States Code, or any specific part of title 24 of the Code of Federal Regulations, which creates an inalienable right of the borrower to select the escrow agent to be used in a mortgage transaction if the lender with whom the borrower wishes to work refuses to do business with that escrow agent. Indeed, Complete does not pursue this argument on appeal, other than to quote the expert witness's declaration in both its opening and reply briefs. Without any further explanation or analysis, Complete failed to meet its burden in opposition to the summary judgment motion.

## IV.

### *UNFAIR BUSINESS PRACTICES*

As to the third cause of action for unfair business practices, the trial court's minute order reads, in relevant part: "The third cause of action for unfair business practices is based on the same facts alleged under the other causes of action in [the second amended complaint]. . . . Because the court denies summary adjudication as to the cause of action for interference with a contract, summary adjudication is not proper for this cause of action." While the unfair business practices claim might have been based on the same underlying facts as the claim for interference with contractual relations, that does not necessarily mean it stands or falls with that claim.

The evidence does not support an unfair business practices claim. In its second amended complaint and in briefing in the trial court and on appeal, Complete referred to several different statutes as the basis for its unfair business practices claim.

21

Under Business and Professions Code section 17200, "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code [(which involves advertising)]." The purpose of section 17200 is to protect consumers and competitors against the creation or perpetuation of monopolies and to promote fair competition. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 179.) "'Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent.'" (*Id.* at p. 180.)

The evidence established that Flagstar did not violate any law. The evidence also established Flagstar did not act fraudulently. As used in Business and Professions Code section 17200, a fraudulent act is one that would be likely to deceive members of the public. (*Daugherty v. American Honda Motor Co., Inc.* (2006) 144 Cal.App.4th 824, 838.) The evidence established the statements on Flagstar's Web site and to Optimum, regarding Complete's ineligible status, were true, and, therefore, even if they were disseminated to the public, they would not have deceived anyone. Finally, the evidence showed that Flagstar's actions were not unfair, within the meaning of section 17200. Because Flagstar had a legitimate business reason for placing Complete on its ineligible list, Complete's claim under the unfairness prong of section 17200 failed. (*Family Home and Finance Ctr. v. Federal Home Loan*, *supra*, 525 F.3d at p. 826.) Complete failed to offer admissible evidence creating a triable issue of material fact as to any prong of the section 17200 test.

Complete also raised its unfair business practices claim under Business and Professions Code section 17046, which makes it "unlawful for any person to use any threat, intimidation, or boycott, to effectuate any violation of this chapter." Flagstar offered evidence that it did not threaten, intimidate, or boycott anyone; to the contrary,

Flagstar offered evidence that Complete continued to do business with Optimum as well as other mortgage brokers. Complete did not create a triable issue of material fact as to any alleged threats, intimidation, or boycotts.

Finally, Complete alleged its unfair business practices claim arose under Business and Professions Code section 17500, which prevents false advertising. Flagstar established it had not done any advertising, and Complete failed to offer admissible evidence to create a triable issue of material fact as to any advertising, false or otherwise, by Flagstar.

## V.

### *DEFAMATION*

As explained *ante*, Flagstar met its initial burden to establish one or more of the elements of Complete's cause of action for defamation could not be proven. Complete failed to demonstrate a triable issue of material fact in opposition to the motion for summary judgment. Therefore, the trial court properly determined Flagstar was entitled to summary adjudication on this cause of action as well.

## VI.

### *DECLARATIONS OF PUCCIO AND KOLP*

Complete argues the declarations of Puccio and Kolp should have been excluded in their entirety. In its written evidentiary objections, Complete argued the Puccio declaration should be excluded in its entirety because, in reaching his opinions, Puccio relied on the first amended complaint and on an earlier version of the Kolp declaration. If the bases for an expert witness's opinions are faulty, that goes to the weight of the opinions, not their admissibility. The trial court did not abuse its discretion in denying Complete's request to strike the Puccio declaration.

23

In the trial court, Complete did not move to strike Kolp's declaration in its entirety. Complete fails to provide any grounds for doing so on appeal. Rather, Complete challenges the correctness of the statements in Kolp's declaration and attacks her credibility. These challenges do not make Kolp's declaration inadmissible, however, nor do they affect the propriety of the summary judgment. (See Code Civ. Proc., § 437c, subd. (e) ["summary judgment may not be denied on grounds of credibility"]; *Trujillo v. First American Registry, Inc.* (2007) 157 Cal.App.4th 628, 632.). We find no grounds for refusing to consider Kolp's declaration.

In opposition to the motion for summary judgment, Complete's specific objections to the Puccio and Kolp declarations were numerous and generally inapplicable. As but one example, Complete objected to Puccio's declaration that he was the author or editor of certain real-estate-related books as lacking sufficient foundation, lacking personal knowledge, and being speculative, based on hearsay, overbroad, compound, and vague and ambiguous. On appeal, Complete fails to point to a single item of evidence and explain why the trial court abused its discretion in overruling Complete's objection to that evidence. Complete has failed to establish any error in the trial court's evidentiary rulings.

Complete asks us to strike the unpublished opinions from other jurisdictions cited in Flagstar's respondent's brief, and to strike the cases and authorities cited in the respondent's brief, which were not cited in Flagstar's memorandum of points and authorities in support of the motion for summary judgment. In addition to violating California Rules of Court, rule 8.54 (which requires all motions in a reviewing court to be accompanied by a separate memorandum), Complete's requests are without merit. While unpublished California opinions generally may not be cited or relied upon (Cal. Rules of Court, rule 8.1115(a)), this rule does not apply to cases from other jurisdictions. Further, while a party may generally not raise new theories or arguments for the first time on appeal, this does not prevent a party from providing additional authority (especially

24

newly decided cases) that bolster the arguments previously raised in the trial court. Complete fails to show that any of the cases cited by Flagstar for the first time on appeal addresses wholly new issues that were not raised in the trial court.

DISPOSITION

The judgment is reversed with directions to enter an order (1) denying the motion for summary judgment, (2) denying the motion for summary adjudication of the first cause of action for intentional interference with contractual relations, and (3) granting the motion for summary adjudication of the second cause of action for intentional interference with prospective economic advantage, the third cause of action for unfair business practices, and the fourth cause of action for defamation. Respondent to recover costs on appeal.

FYBEL, J.

WE CONCUR:

O'LEARY, P. J.

BEDSWORTH, J.