**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FAMILY HOME AND FINANCE
CENTER, INC., a California
Corporation doing business as
Park Place Funding; DAISY J.
PHILLIPS, also known as DJ
Phillips doing business as All Star
Financial; MARK GALLAGHER,
              *Plaintiffs-Appellants,*

          v.

FEDERAL HOME LOAN MORTGAGE
CORPORATION, a District of
Columbia Corporation,
              *Defendant-Appellee.*

No. 06-56521

D.C. No.
CV-05-08752-PA

OPINION

Appeal from the United States District Court
for the Central District of California
Percy Anderson, District Judge, Presiding

Argued and Submitted
April 7, 2008—Pasadena, California

Filed May 7, 2008

Before: Alfred T. Goodwin, Andrew J. Kleinfeld, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Goodwin

**COUNSEL**

Julian B. Bellenghi, Michael J. Collins, Collins & Bellenghi, Newport Beach, California, for the plaintiffs-appellants.

Kelli L. Sager, Davis Wright Tremaine, Los Angeles, California; Graciela M. Rodriguez, King & Spalding, Washington, D.C., for the defendant-appellee.

**OPINION**

GOODWIN, Circuit Judge:

Family Home and Finance Center, Inc., doing business as Park Place Funding, along with Daisy J. Phillips and Mark Gallagher (collectively "Park Place") appeal the summary judgment in favor of Federal Home Loan Mortgage Corporation ("Freddie Mac") on claims against Freddie Mac for intentional interference with contract, unfair competition under California Business & Professions Code § 17200, and defamation. Park Place also assigns error to the district court's denial of its Federal Rule of Civil Procedure 56(f) request to defer ruling on Freddie Mac's motion for summary judgment.

The district court had jurisdiction pursuant to 12 U.S.C. § 1452(f). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I. BACKGROUND

Park Place operates a mortgage broker business initiating loan applications from prospective borrowers and presenting the applications to lenders for processing and potential funding. National City Mortgage Company ("National City"), who is not a party to this appeal, processed and funded many of Park Place's loan applications and sold the loans to Freddie Mac. Freddie Mac in turn would sell Participation Certificates, or interests, in pools of loans to capital market investors, or keep the loans for its own investment.

In December 2004, a capital market investor notified Freddie Mac that some loans included in its mortgage pools were prepaying at a faster than normal rate, thus reducing the investor's anticipated rate of return. Freddie Mac contacted National City to look into the pools with rapid prepayment rates, and both National City and Freddie Mac investigated the prepayment activity. Park Place had been encouraging its borrowers to apply for initial loans at a high interest rate, and then to engage in early refinancing, which resulted in a rising curve of rapid prepayment. These prepayments violated no law, and may have been in accordance with National City's lending policies.

National City notified Park Place of its intent to terminate their mortgage broker contract in March 2005, and terminated the contract soon thereafter. Also in March 2005, Freddie Mac began to investigate Park Place's business practices. In July 2005, Freddie Mac first notified Park Place of its intent to put Park Place on the Exclusionary List, a list which identifies entities with whom Freddie Mac will no longer transact business. Freddie Mac had determined that Park Place's loans were not of investment quality.

Park Place appealed to Freddie Mac's Exclusionary List Appeal Committee. That committee denied the appeal, and on January 31, 2006, Park Place was put on the Exclusionary List. The List is published only to those lenders who sell or service loans to Freddie Mac, and the effect of exclusion is to prohibit excluded entities from participating in business transactions with Freddie Mac. Park Place was effectively denied access to the principal market for the loans it was writing because it was placed on the List.

In March 2006, Park Place filed an amended complaint in the district court seeking damages for intentional interference with contract, unfair competition, and defamation. Park Place alleged that Freddie Mac intentionally interfered with its contract to broker mortgage loans to National City. The district court granted summary judgment in favor of Freddie Mac on this claim because Park Place had no admissible evidence that Freddie Mac influenced or caused National City to terminate the contract with Park Place, or intended that result.

Park Place also alleged that by placing it on the Exclusionary List, Freddie Mac engaged in unfair competition and defamation. The district court granted summary judgment against these claims, for reasons that will be discussed below.

Park Place attributes any deficit in its evidence to the denial of its request under Fed. R. Civ. P. 56(f) to defer ruling on summary judgment. Park Place's request alleged that Freddie Mac had engaged in dilatory tactics preventing it from obtaining relevant evidence. The district court denied the request because Park Place failed to articulate the specific facts it hoped to elicit, and did not show how such facts would defeat summary judgment. Also, the district court denied the request because Park Place failed to file timely motions to compel discovery or extend the discovery cutoff date.

## II.  DISCUSSION

### A.  Intentional Interference with Contract

**[1]** Under California law, a claim for intentional interference with contract requires: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional acts designed to induce breach or disruption of the contract; (4) actual breach or disruption; and (5) resulting damage. *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 791 P.2d 587, 589-90 (Cal. 1990). We agree with the district court that Park Place's claim fails because there was no admissible evidence that Freddie Mac influenced or caused National City to terminate its mortgage broker contract with Park Place, intentionally or otherwise.

**[2]** Park Place contends that the testimony of its president, Mark Gallagher, proved that Freddie Mac influenced National City to terminate the contract. Gallagher testified only that a National City employee had told him that Freddie Mac and National City would shut Park Place down. That testimony, which may have been admissible hearsay to show National City's state of mind, does not connect Freddie Mac in any way to National City's decision. The district court correctly inferred that, at best, the testimony suggests that National City may have colluded with Freddie Mac to stop handling Park Place business. But the statement does not shed any light on the intentions of Freddie Mac.

**[3]** Park Place also contends that circumstantial evidence precludes summary judgment. The circumstantial evidence tended to prove that Park Place had been a profitable mortgage broker for National City, which no one denied, and that National City may have been reluctant to terminate its contract with Park Place. The evidence also showed that Freddie Mac may have known about Park Place's rapid refinancing strategy before National City terminated the contract. Even if, as Park Place seems to allege, Freddie Mac was negligent in

its tardy discovery that it was dealing in problematic loans, evidence of negligence is not proof of intentional interference by Freddie Mac with Park Place's contract. A necessary element of Park Place's claim is proof that Freddie Mac's action was designed to accomplish interference. This evidence proved only that Freddie Mac would no longer buy a product it could not sell to its customers. It proved nothing about interference with the originators of those products.

## B.   Unfair Competition

**[4]** Whether a business practice constitutes unfair competition under Cal. Bus. & Prof. Code § 17200 "involves an examination of [that practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer." *People v. Duz-Mor Diagnostic Lab., Inc.*, 68 Cal. App. 4th 654, 662 (Ct. App. 1998). The district court concluded that Freddie Mac's placement of Park Place on its Exclusionary List did not constitute unfair competition because Freddie Mac had a legitimate business reason for placing Park Place on the List. Park Place failed to offer any evidence to create a material question of fact about the marketability of its debt.

Park Place argues that summary judgment was inappropriate because disputes exist as to: (1) whether its repetitive refinancing strategy caused the harm suffered by Freddie Mac; (2) whether its loans were inappropriate for inclusion in Freddie Mac's mortgage pools; and (3) whether Freddie Mac put Park Place on the Exclusionary List in contravention of the List's purpose.

**[5]** First, there is no dispute that Park Place's repetitive refinancing strategy caused Freddie Mac to lose money on Park Place loans. In fact, Freddie Mac lost approximately $3 million as a result of the rapid prepayment of loans in its mortgage pools and own investment portfolio. Even if Park Place is correct in asserting that National City and Freddie

Mac are also to blame for losses suffered by capital market investors, Park Place remains responsible for the non-marketable quality of the loans it produced. Second, there is no dispute that Park Place loans, which prepaid at a faster than normal rate, were inappropriate for inclusion in Freddie Mac's mortgage pools. Loans with rapid prepayment rates resulted in losses to capital market investors, and Freddie Mac's customers did not wish to invest in such loans. In the debt market, packaged loans are a product offered for sale. If potential buyers do not want to buy the product, Freddie Mac is under no obligation to order more of it. Like dog food, if dogs won't eat it, the store won't buy it.

**[6]** Third, Park Place contends, conflating its unfair competition claim with its defamation claim, that the Exclusionary List is a "fraud list," it did not commit fraud, and thus listing Park Place is defamatory. Freddie Mac, however, lists, after notice and an opportunity to appeal, not only entities whose business practices may be fraudulent, but also entities whose practices are not necessarily fraudulent, but "may seriously and adversely affect Freddie Mac's programs or business interests." This evidence was uncontradicted. Furthermore, the utility of the Exclusionary List to Freddie Mac significantly outweighed the impact upon Park Place — that it was denied access to a market that didn't want to buy its loans.

## C. Defamation

**[7]** California state law explains that defamation "involves the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (Ct. App. 1999). The Common Interest Privilege may protect the publication if, absent malice, "the communicator and the recipient have a common interest and the communication is of a kind reasonably calculated to protect or further that interest." *Williams v. Taylor*, 129 Cal. App. 3d 745, 751 (Ct. App. 1982).

**[8]** The district court granted summary judgment in favor of Freddie Mac because Park Place could not prove malice to defeat the Common Interest Privilege. We agree that there was no showing of malice. The evidence shows that Freddie Mac, after investigation, put Park Place on the Exclusionary List to prevent its further purchase of loans that were not of investment quality. There is no evidence that Freddie Mac acted with hatred or ill will towards Park Place, or with reckless disregard for the publication's truth. Evidence of any such motive would have constituted malice. *See Noel v. River Hills Wilsons, Inc.*, 113 Cal. App. 4th 1363, 1370 (Ct. App. 2003) (defining the malice necessary to defeat the Common Interest Privilege).

**[9]** Park Place argues that the Common Interest Privilege does not apply, but presents no evidence to show why it should not apply here. Freddie Mac publishes the Exclusionary List only to its lenders, with whom it shares a business relationship and common interest in dealing with investment quality loans. Moreover, Park Place offers no cogent reason why truth is not a complete defense. Park Place simply repeats its assertion that the publication by Freddie Mac was false because the Exclusionary List is a "fraud list," and it did not commit any fraud. The evidence in the record as noted, however, proves that the List was created with a legitimate business purpose to exclude those who may have committed fraud or who deal with loans not of investment quality. Thus, placement of Park Place on the Exclusionary List for reasons other than fraud was not a false statement of fact by Freddie Mac.

## D.  Fed. R. Civ. P. 56(f) Request

**[10]** Under Fed. R. Civ. P. 56(f), a trial court may order a continuance on a motion for summary judgment if the party requesting a continuance submits affidavits showing that, without Rule 56 assistance, it cannot present facts necessary to justify its claims. The requesting party must show: (1) it

has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment. *Cal. on behalf of Cal. Dep't of Toxic Substances Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998). Failure to comply with these requirements "is a proper ground for denying discovery and proceeding to summary judgment." *Id.* (quoting *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986)).

**[11]** Park Place sought evidence of the criteria used to place entities on the Exclusionary List, as well as the entities placed on the Exclusionary List and the reasons for exclusion. The district court properly concluded that the evidence sought is only "generically relevant," and that Park Place failed to show how the evidence is "essential" to oppose summary judgment. Because Park Place did not satisfy the requirements of Fed. R. Civ. P. 56(f), we cannot say that the district court abused its discretion in denying Park Place's request to defer ruling on summary judgment.

Park Place also contends that the district court abused its discretion when it concluded that, even if Park Place had satisfied the Rule 56(f) requirements, it was not entitled to additional discovery because it failed to file timely motions to compel and extend discovery. *See Mackey v. Pioneer Nat'l Bank*, 867 F.2d 520, 524 (9th Cir. 1989) (explaining that a moving party is not entitled to additional discovery under Fed. R. Civ. P. 56(f) "if it fails diligently to pursue discovery before summary judgment"). We need not reach Park Place's alternative assignment of error because we agree that Park Place failed to satisfy the requirements of Fed. R. Civ. P. 56(f).

**AFFIRMED**.