**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| In re: DEBBIE REID O'GORMAN, *Debtor*, ------------------------------ THE LOVERING TUBBS TRUST, Trustee; CLC COMPLIANCE, INC., Trustee; PACIFIC EQUITIES, LLC, *Appellants*, v. TIMOTHY W. HOFFMAN, Chapter 7 Trustee, *Appellee*. | No. 23-60005 BAP No. NC-22-1062-BFT OPINION |

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Brand, Faris, and Taylor, Bankruptcy Judges, Presiding

Argued and Submitted February 13, 2024
San Francisco, California

Filed September 9, 2024

Before:  Carlos T. Bea, David F. Hamilton,[*] and Morgan
Christen, Circuit Judges.

Opinion by Judge Christen

**SUMMARY**[**]

**Bankruptcy**

The panel affirmed the Bankruptcy Appellate Panel's order affirming the bankruptcy court's order granting summary judgment to the Trustee on the Trustee's claim seeking to avoid under 11 U.S.C. § 548(a)(1) a fraudulent transfer of Chapter 7 Debtor Debbie O'Gorman's home.

O'Gorman transferred the property to the Lovering Tubbs Trust for no consideration to stymie foreclosure efforts by Grant Reynolds, an attorney who had performed legal services for O'Gorman in a matter unrelated to this dispute.

Appellants, the Lovering Tubbs Trust and other entities created to facilitate the transfer, argued that the Trustee lacked Article III standing to bring a claim under § 548 because O'Gorman's creditors were not harmed by the transfer. The panel held that because O'Gorman's transfer of the property depleted the assets in the estate, the estate

---

[*] The Honorable David F. Hamilton, United States Circuit Judge for the U.S. Court of Appeals for the Seventh Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

suffered an injury-in-fact that is redressable by the avoidance sought here, and the Trustee, who is the representative of the estate, satisfied the requirements of Article III standing.

The panel held that actual harm to creditors is not an element of a fraudulent transfer claim under § 548. Nothing in § 548 requires a trustee to show that a creditor was or could have been harmed by the transfer in order to bring an avoidance action.

The panel held that the bankruptcy court properly granted summary judgment. Rejecting several arguments advanced by Appellants, the panel concluded that (1) the bankruptcy court did not find that proof of fraudulent intent was not required; (2) the bankruptcy court did not overlook direct evidence of Debtor's legitimate non-fraudulent intentions in transferring the property; (3) Appellants' procedural objections to the summary judgment order are unavailing; (4) it is undisputed that O'Gorman believed she was indebted to Reynolds and that she acted with the intent to delay or hinder his foreclosure on her property; and (5) the bankruptcy court did not abuse its discretion in denying Appellants' request for a continuance to conduct discovery.

## COUNSEL

Reno F.R. Fernandez III (argued) Binder Malter Harris & Rome-Banks LLP, Santa Clara, California; Kelly Woodruff, Complex Appellate Litigation Group LLP, San Francisco, California; for Appellants.

Charles P. Maher (argued), Rincon Law LLP, San Francisco, California, for Appellee.

# OPINION

CHRISTEN, Circuit Judge:

Faced with the prospect of foreclosure by a creditor, Debbie O'Gorman turned to attorney William Utnehmer to help her save her home. Utnehmer offered a simple proposition: transfer the property to an irrevocable land trust in which Utnehmer's company held an 80% beneficial interest and allow him to advance the funds necessary to repair and ready the property for its eventual sale. Utnehmer proposed that O'Gorman would receive a 20% beneficial interest in the trust and a priority distribution of $235,000 in the event the property sold. O'Gorman accepted Utnehmer's offer and transferred the property to the Lovering Tubbs Trust for no consideration. O'Gorman estimated that the value of the property was $2.5 million when she entered into the agreement.

When O'Gorman subsequently filed a voluntary petition under Chapter 7 of the Bankruptcy Code, the Trustee of O'Gorman's estate sought to avoid the transfer under 11 U.S.C. § 548(a)(1)(A). Moving for summary judgment, the Trustee argued that O'Gorman fraudulently transferred the property to hinder or delay the foreclosure. The entities that Utnehmer created to facilitate the transfer—the Lovering Tubbs Trust, Pacific Equities, LLC, and CLC Compliance, Inc.—opposed the motion for summary judgment but submitted no evidence controverting O'Gorman's own statement that she transferred the property to stymie foreclosure efforts by Grant Reynolds. They similarly filed no affidavit or declaration in support of their request for a continuance to allow for discovery. The bankruptcy court

granted the Trustee's motion, and the Bankruptcy Appellate Panel affirmed.

On appeal, the entities argue for the first time that the Trustee lacked Article III standing to bring this action and also argue that the bankruptcy court improperly granted summary judgment and denied their request for a continuance to conduct discovery. We affirm the Bankruptcy Appellate Panel (BAP)'s order affirming the bankruptcy court's order granting summary judgment on the Trustee's fraudulent transfer claim.

## I.  BACKGROUND

Debbie Reid O'Gorman is the owner of a 30-acre parcel of land on which she resides in Calistoga, California. In 2010, she recorded a second deed of trust against the property in favor of Reynolds, an attorney who had performed legal services for O'Gorman in a matter unrelated to this dispute. By 2019, O'Gorman was in default on her mortgage with the senior lienholder on the property. Protecting his junior interest, Reynolds cured the default by advancing mortgage payments to the holder of the first deed of trust in amounts aggregating under $300,000. In February 2020, Reynolds initiated a nonjudicial foreclosure on his deed of trust.

Attorney William Utnehmer contacted O'Gorman in July 2020 and offered to save her property from Reynolds' foreclosure efforts by transferring it into an irrevocable land trust. To accomplish the transfer, Utnehmer created three entities: the Lovering Tubbs Trust, a land trust; Pacific Equities, LLC, a real estate investment group created to arrange for funding and development of the property; and CLC Compliance, Inc., an entity that would serve as trustee of the Lovering Tubbs Trust. Utnehmer holds an interest in

Pacific Equities and is an officer of CLC Compliance. The Lovering Tubbs Trust beneficiaries are the O'Gorman Trust, which holds a 20% beneficial interest, and Pacific Equities, which holds an 80% beneficial interest. The Lovering Tubbs Trust agreement states that its purpose is to "take and hold title to the [O'Gorman] property . . . and to preserve the same until its sale or other disposition." The agreement provides that upon a sale of the property, after payment of all debts, liabilities, and obligations and following reimbursement of capital contributions, O'Gorman will receive a priority distribution of $235,000 before any distribution to beneficiaries.

By grant deed executed and delivered on January 7, 2021, O'Gorman transferred the property, which she estimates had a gross value of $2.5 million at the time she transferred it, to the Lovering Tubbs Trust. The grant deed shows that no transfer tax was paid, and O'Gorman attests that she received no money in exchange for the property. Neither the senior lienholder nor Reynolds received notice of the transfer. O'Gorman has continued to occupy the property and was still living there on the bankruptcy petition date.

In a letter written June 30, 2021—prepared on the letterhead for Utnehmer's law firm and signed by Utnehmer and O'Gorman—Utnehmer stated that he was engaged because O'Gorman was subject to the protections of the Older Americans Act of 2006 and appeared to have experienced past predatory lending practices and financial elder abuse. The letter went on to state that Utnehmer had had "successfully structured a work-out" for the property by transferring it to the Lovering Tubbs Trust and that Pacific Equities had arranged for its clean-up, renovation, and remediation of building code violations. The letter asserted

that these improvement efforts were frustrated by the COVID-19 pandemic, by tenants refusing to vacate, and by Utnehmer's business partner's unstable mental condition and resulting failure to fund his share of the project. The letter memorialized Utnehmer's recommendation that the property be immediately marketed while his law firm maintained a legal defense to postpone the foreclosure.

O'Gorman terminated her relationship with Utnehmer in August 2021, and commenced this action by filing a petition for voluntary relief under Chapter 7 of the Bankruptcy Code.[1]  The bankruptcy court appointed Timothy W. Hoffman as Chapter 7 Trustee.  O'Gorman scheduled an interest in the property and estimated its value at $3 million along with a comment that "the debtor was wrongfully induced to convey her interest in the property to CLC Compliance, Inc., in its capacity as trustee of The Lovering Tubbs Trust."  O'Gorman noted that she believed the January 2021 deed was "voidable," and estimated that her non-real estate assets were worth a total of $26,465.93.

In her schedules of liabilities, O'Gorman disclosed 26 unsecured and secured creditors.  By October 25, 2021, 14 creditors had filed proofs of claim, including 12 unsecured creditors with claims totaling $47,396.  Reynolds filed a secured claim for approximately $1.5 million, which the bankruptcy court has since disallowed in its entirety.[2]

---

[1] O'Gorman had previously filed, *pro se*, a petition for relief under Chapter 13 of the Bankruptcy Code on July 7, 2021, commencing *In re O'Gorman*, No. 21-10332 (Bankr. N.D. Cal.).  That petition was dismissed on July 29, 2021, for failure to pay fees and to file required documents.

[2] The Trustee argued that Reynolds had never loaned O'Gorman the money that the deed of trust secured.  We grant Appellants' request to

On November 19, 2021, the Trustee commenced this adversary proceeding by filing a complaint against the Lovering Tubbs Trust, CLC Compliance, and Pacific Equities (collectively, Appellants), alleging causes of action for actual fraudulent transfer under 11 U.S.C. § 548(a)(1)(A), constructive fraudulent transfer under § 548(a)(1)(B), and for avoidance of preference under § 547(b).

Five weeks after Appellants filed their answer denying the Trustee's allegations, the Trustee moved for partial summary judgment. The Trustee argued that the transfer of the property to the Lovering Tubbs Trust was intentionally fraudulent and designed to hinder and delay Reynolds' efforts to foreclose on his deed of trust. To establish O'Gorman's fraudulent intent, the Trustee argued that at least six of the eleven "badges of fraud" enumerated in Cal. Civ. Code § 3439.04(b)(1)-(11) were present: (a) the transfer was to an insider, the Lovering Tubbs Trust, in which O'Gorman held a 20% beneficial interest; (b) O'Gorman remained in control of the property after the transfer; (c) at the time of the transfer, Reynolds had been pursuing a foreclosure on his deed of trust and the transfer was designed to thwart that effort; (d) the transfer was a transfer of substantially all of O'Gorman's assets; (e) by transferring the property to the Lovering Tubbs Trust, O'Gorman removed the property from the reach of her

---

take judicial notice of an order issued by the bankruptcy court that sustained the Trustee's objection to Reynolds' claim and disallowed it "in its entirety." *See* Fed. R. Evid. 201(c).

The other secured creditor, Western States Capital Corporation, was not listed in O'Gorman's schedule of liabilities but filed a proof of claim worth $50,295.98. In February 2022, the California Department of Tax and Fee Administration filed a priority claim for $2,870.

creditors; and (f) the Lovering Tubbs Trust paid no consideration for the property.

The Trustee provided a declaration from O'Gorman executed on January 18, 2022, in support of the motion. In it, O'Gorman declared that she did not receive any funds for clean-up, development, or sale of the property, nor was she aware of any third party who had received funds for those purposes. O'Gorman's declaration constituted direct evidence of her fraudulent intent, explaining that it was her "understanding that the transfer would prevent or delay Mr. Reynolds from foreclosing on his deed of trust and that was [her] only reason for following Mr. Utnehmer's advice." She went on to aver that she now believes Utnehmer's ultimate intent in arranging the transfer was to defraud her, but she relied on his legal advice at the time because she "was desperate to save [her] home from foreclosure."

Appellants filed an opposition to the motion three days late. They argued that the parties had not yet engaged in any discovery or conducted a Rule 26(f) conference, and they urged the bankruptcy court to deny the motion for summary judgment as premature. Appellants requested time to continue discovery under Rule 56(d) so they could obtain and present facts to oppose the motion. Finally, they argued that genuine issues of material fact were in dispute because the Trustee had not provided sufficient evidence that the transfer was done with actual intent to hinder, delay, or defraud Reynolds, whom they argued the Trustee had not shown to be a legitimate creditor. Appellants did not submit a declaration with their opposition or present admissible evidence in any other form.

After hearing argument, the bankruptcy court denied Appellants' request for time to conduct discovery and

granted partial summary judgment in favor of the Trustee on his claim to avoid the transfer pursuant to the actual fraudulent transfer provision in § 548(a)(1)(A).[3]  The court concluded that Appellants had failed to establish the existence of a triable issue of material fact with any admissible controverting evidence, or to comply with Rule 56(d)'s requirement to submit an affidavit or declaration in support of a request for a continuance of the motion.  The Bankruptcy Appellate Panel of the Ninth Circuit affirmed the court's order granting summary judgment in an unpublished decision.  The BAP reasoned that summary judgment was justified because the Trustee presented a prima facie case of fraudulent transfer, and Appellants presented nothing to create a genuine issue of material fact.  Appellants timely appealed.[4]

## II.    STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. §§ 158(d) and 1291, and review de novo decisions of the BAP.  *See In re Hutchinson*, 15 F.4th 1229, 1232 (9th Cir. 2021).  We also review de novo the bankruptcy court's grant of summary judgment, *see In re LCO Enters.*, 12 F.3d 938, 941 (9th Cir. 1993), and we review for abuse of discretion the bankruptcy court's denial of a Rule 56(d) request to defer a summary judgment ruling, *see InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 661 (9th Cir. 2020).

---

[3] Bankruptcy Rule 7056 provides that Federal Rule of Civil Procedure 56 applies in adversary proceedings in bankruptcy court.

[4] Although the bankruptcy court granted summary judgment only on the fraudulent transfer claim brought pursuant to § 548(a)(1)(A), the Trustee did not pursue the two other claims, and the bankruptcy court and the BAP entered both final judgments.

## III.    DISCUSSION

As they did before the BAP, Appellants argue that the bankruptcy court improperly granted summary judgment to the Trustee and that the bankruptcy court abused its discretion by denying their request for a continuance to conduct discovery.  They also argue for the first time on appeal that the Trustee lacks Article III standing to bring a claim under § 548 because O'Gorman's creditors were not harmed by the transfer of her property.  Because Article III standing is a threshold jurisdictional issue, we address it first.  *See In re E. Coast Foods, Inc.*, 80 F.4th 901, 905 (9th Cir. 2023).

### A.  The Trustee Had Article III Standing.

To have standing in bankruptcy court, a plaintiff must satisfy Article III constitutional requirements.  *See In re Thorpe Insulation Co.*, 677 F.3d 869, 884 (9th Cir. 2012).  To establish standing under Article III of the Constitution, "a plaintiff must show: (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  "If the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve."  *Id*. (internal quotation marks and citation omitted).  The injury-in-fact element "requires that the party seeking review be himself among the injured."  *Lujan*, 504 U.S. at 563 (citation omitted).

Appellants argue that the Trustee lacks standing to maintain an action to set aside the transfer of O'Gorman's

property under § 548 because none of O'Gorman's creditors were harmed by the transfer. Appellants cite no controlling authority, but they contend that "[c]ourts have consistently held that an avoidance action can only be pursued if there is some benefit to creditors and may not be pursued if it would only benefit the debtor." *In re Murphy*, 331 B.R. 107, 122 (Bankr. S.D.N.Y. 2005). Appellants argue that the transfer of the property did not cause an actionable injury to any of O'Gorman's creditors because it was later determined that Reynolds did not have a valid claim to the property at the time the transfer occurred, and the unsecured creditors can be paid in full on account of O'Gorman's anticipated $235,000 priority distribution.

Appellants' argument confuses justiciability with the merits of the Trustee's claim. It is correct, as Appellants note, that the "purpose of § 548 is to preserve assets of the bankruptcy estate for the benefit of creditors . . . and to prohibit the transfer of a debtor's property with either the intent or effect of placing the property beyond the reach of its creditors." *In re Feiler*, 230 B.R. 164, 169 (B.A.P. 9th Cir. 1999), *aff'd*, 218 F.3d 948 (9th Cir. 2000) (internal quotation marks and citations omitted); *see also In re N. Merch., Inc.*, 371 F.3d 1056, 1060 (9th Cir. 2004) ("11 U.S.C. § 548 seeks to prevent the debtor from depleting the resources available to creditors through gratuitous transfers of the debtor's property." (internal quotation marks and citation omitted)). But to satisfy Article III's injury requirement, the Trustee has the burden to demonstrate only that he has a "judicially cognizable interest" in avoiding the transfer on behalf of the estate, irrespective of the particular statute under which he seeks relief. *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 664–65 (9th Cir. 2021) (citation omitted) (explaining that an "injury-in-fact" is the

invasion of a legally protectable interest but does not require showing that the right was statutorily protected).

Appellants' argument that the Trustee lacks standing overlooks that a bankruptcy trustee is the representative of the bankrupt estate. *See Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1002 (9th Cir. 2005) (citing 11 U.S.C. § 323). "Thus, under the Bankruptcy Code the trustee stands in the shoes of the bankrupt corporation and . . . [may] bring any suit that the bankrupt corporation could have instituted had it not petitioned for bankruptcy." *Id*. (internal quotation marks and citation omitted and alterations accepted). We have specifically recognized that "[i]n order to protect the interests of the estate, a bankruptcy trustee may bring an action to avoid a transfer made before the bankruptcy" under § 548(a)(1)(A). *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1145 (9th Cir. 2013).

Appellants cite *In re East Coast Foods,* 80 F.4th 901 (9th Cir. 2023), but that case does not support their position. In *East Coast Foods*, we concluded that a *creditor* lacked standing to challenge a fee award to the trustee where the award would not diminish payment to that creditor under the bankruptcy plan. *Id.* at 904–07. Specifically, we held that the creditor's alleged injury was too conjectural to establish an injury-in-fact because the bankruptcy plan guaranteed creditors full payment with interest. *Id.* at 907–09. Another case Appellants cite, *Adelphia Recovery Tr. v. Bank of Am., N.A.*, 390 B.R. 80 (S.D.N.Y. 2008), *aff'd*, 379 F. App'x 10 (2d Cir. 2010), is inapposite for the same reason. There, the plaintiff who pursued a fraudulent transfer claim was not a bankruptcy trustee, but rather a recovery trust holding title to claims asserted by creditors. *Id*. at 84–85. The court explained that, "[g]iven that the creditors of the Obligor Debtors have received full payment with interest under the

Plans, it follows that these creditors do not stand to benefit from recovery on the Bankruptcy Claims at issue here, and the [recovery trust] does not have standing to bring these claims *on their behalf*." *Id*. at 95 (emphasis added).

To have standing to bring this suit, the Trustee was required to establish an injury to the estate—not, as Appellants argue, to Reynolds or any of O'Gorman's other creditors. Because there is no question that O'Gorman's transfer of the property to the Lovering Tubbs Trust depleted the assets in the estate, the estate suffered an injury-in-fact that is redressable by the avoidance sought here. *See In re Bernard L. Madoff Inv. Sec. LLC*, 2022 WL 493734, at \*10 (S.D.N.Y. Feb. 17, 2022) ("Because the Trustee sues as a fiduciary of an insolvent estate to recover customer property for the benefit of that estate, he has Article III standing."); *cf. In re Wood Treaters, LLC*, 491 B.R. 591, 597 (Bankr. M.D. Fla. 2013) ("Clearly, the Trustee bears the burden of proving her standing to bring the avoidance action [under § 549, permitting avoidance of post-petition transfers], and therefore bears the burden of proving that the estate suffered an injury as a result of the transfers that she seeks to avoid."). We conclude that the Trustee satisfied the requirements of Article III standing.

### B. Injury to a Creditor Is Not an Element of § 548.

The BAP understood Appellants' argument to be that actual injury to a creditor is an element of a claim under § 548. On appeal, Appellants clarify that their position was that the Trustee lacked Article III standing for failure to show an injury. Nevertheless, because the bankruptcy court granted partial summary judgment on the Trustee's fraudulent transfer claim, we address whether actual injury to a creditor is an element for a claim under § 548. We agree

with the BAP that nothing in § 548 requires a trustee to show that a creditor was or could have been harmed by the transfer in order to bring an avoidance action.

Section 548(a)(1) requires a trustee to show that a debtor transferred the subject property with the intent to hinder, delay, or defraud:

> The trustee may avoid any transfer . . . of an interest of the debtor in property . . . that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . . made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

11 U.S.C. § 548(a)(1)(A). Our case law does not answer whether a transfer may be avoided under § 548(a)(1)(A) without showing that a creditor was harmed by the transfer, but other circuits have considered the question. In *Tavenner v. Smoot*, 257 F.3d 401 (4th Cir. 2001), the Fourth Circuit considered an appeal filed by a debtor who had transferred a large personal injury award into the bank account of a corporate entity he had established for a family business. *Id.* at 404–05. Within a few months, the debtor was found liable for damages in an unrelated matter, and the judgment creditor sought to set aside the transfer in state court so that the personal injury award could be available to pay its judgment. *Id.* at 405. Before the state court took action, the debtor filed a Chapter 7 bankruptcy petition. *Id.* The debtor listed the personal injury award on his amended schedules,

claimed that the award was exempt, and argued, in opposition to the trustee's § 548 motion, that the transfer could not be properly characterized as fraudulent because it was impossible for the debtor to "hinder, delay, or defraud" a creditor by transferring property that the creditor was not entitled to in the first place. *Id.* at 406–08.

The Fourth Circuit disagreed. It noted that the text of § 548(a)(1)(A) permits a trustee to avoid "*any* transfer of an interest of the debtor in property" if the transfer or obligation is entered into with the requisite intent. *Id.* at 407 (emphasis in original). The Fourth Circuit explained, "[n]othing in § 548 indicates that a trustee must establish that a fraudulent conveyance actually harmed a creditor." *Id.* "Section 548 properly focuses on the intent of the debtor, for if a debtor enters into a transaction with the express purpose of defrauding his creditors, his behavior should not be excused simply because, despite the debtor's best efforts, the transaction failed to harm any creditor." *Id.*; *accord In re Sherman*, 67 F.3d 1348, 1355 n.6 (8th Cir. 1995) ("[U]nder § 548(a)(1), actual harm is not required; the trustee must show only that the debtor acted with the intent to hinder, delay or defraud creditors."); *see also In re Bayou Grp., LLC*, 439 B.R. 284, 304–05 (S.D.N.Y. 2010) ("Moreover, only the intent to hinder, delay or defraud need be shown; success in this regard need not be demonstrated for a transfer to constitute an actual fraudulent conveyance."). We are persuaded by the reasoning of these cases and join our sister circuits in holding that "actual harm" to creditors is not an element of a fraudulent transfer claim under § 548.

This interpretation upholds the goals of efficiency and finality in bankruptcy. We have repeatedly recognized that trustees have the duty to marshal the estate's assets as quickly and efficiently as possible so that creditors' claims

may be paid. *See* 11 U.S.C. § 704(a)(1) ("The trustee shall . . . collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest[.]"); *see also In re Riverside-Linden Inv. Co.*, 925 F.2d 320, 322 (9th Cir. 1991) (approving the bankruptcy court' description of "the trustee's duty to expeditiously close the estate as his 'main' duty"); Fed. R. Bankr. P. 1001 ("Federal Rules of Bankruptcy Procedure . . . shall be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every case and proceeding."). An interpretation of § 548 that makes the fraudulent nature of a transfer dependent upon the post hoc determination of the validity of creditors' claims would risk upending the work trustees perform at the outset of bankruptcy proceedings to marshal the assets available to pay creditors' claims.

## C. The Bankruptcy Court Properly Granted Summary Judgment.

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

"Questions involving a person's state of mind, e.g., whether a party knew or should have known of a particular condition, are generally factual issues inappropriate for resolution by summary judgment." *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985). "However, where the palpable facts are substantially undisputed, such issues can become questions of law which may be properly decided by summary judgment." *Id.*

"It is often impracticable, on direct evidence, to demonstrate an actual intent to hinder, delay or defraud creditors." *In re Acequia, Inc.*, 34 F.3d 800, 805 (9th Cir. 1994) (citation omitted). "Therefore, as is the case under the common law of fraudulent conveyance, courts applying Bankruptcy Code § 548(a)(1) frequently infer fraudulent intent from the circumstances surrounding the transfer, taking particular note of certain recognized indicia or badges of fraud." *Id.* at 805–06 (citation omitted); *see also* 5 Richard Levin & Henry J. Sommer, *Collier on Bankruptcy* ¶ 548.04 (16th ed. 2024) ("[I]f the debtor arranges and consummates a transaction that depletes assets available to creditors . . . with little or no corresponding benefit to the debtor's estate, then the requirements for actual intent can be met."). "The presence of a single badge of fraud may spur mere suspicion; the confluence of several can constitute conclusive evidence of actual intent to defraud, absent 'significantly clear' evidence of a legitimate supervening purpose." *In re Acequia, Inc.*, 34 F.3d at 806 (citation omitted). "[O]nce a trustee establishes indicia of fraud in an action under section 548(a)(1), the burden shifts to the transferee to prove some 'legitimate supervening purpose' for the transfers at issue." *Id.*

Appellants advance several arguments as to why the bankruptcy court's order granting summary judgment was

improper. None is persuasive. First, Appellants argue that because the bankruptcy court and the BAP allegedly "erred in concluding that proof of intent to defraud creditors is not required," they could not have found this element of the Trustee's § 548 claim to be satisfied. This argument fails because the bankruptcy court did not conclude that proof of fraudulent intent was not required. Rather, the bankruptcy court granted the Trustee's motion for summary judgment "[b]ased on the Plaintiff's motion and supporting declarations" and its conclusion "that the Plaintiff's evidence is uncontroverted." We agree. O'Gorman's declaration provided direct evidence of her fraudulent intent by stating that, at the time of the transfer, it was O'Gorman's "understanding that the transfer would prevent or delay Mr. Reynolds from foreclosing on his deed of trust and that was [her] only reason for following Mr. Utnehmer's advice." Even if the Trustee had not produced this direct evidence, we agree with the BAP that the circumstances here established O'Gorman's fraudulent intent, because the Trustee's motion for summary judgment provided direct and circumstantial evidence of fraud, and Appellants failed to carry their burden of raising a genuine dispute that there was "significantly clear" evidence of a "legitimate supervening purpose" for the transfer.[5] *In re Acequia, Inc.*, 34 F.3d at 806 (citation omitted).

---

[5] The correct application and construction of § 548(a)(1)(A) is a matter of federal law, but the BAP approved of the bankruptcy court's consideration of California's codified "badges of fraud." We agree, as the list codified at Cal. Civ. Code Section 349.04(b)(1)-(11) comprises circumstantial evidence of fraud. *See In re Sherman*, 67 F.3d 1348, 1354 (8th Cir. 1995) (approving the bankruptcy court's use of Missouri's codification of the common law badges of fraud: "Although the existence of actual fraudulent intent under § 548(a)(1) is a matter of

Appellants rely, in part, on *Coder v. Arts*, 213 U.S. 223 (1909). There, the Supreme Court analyzed the common law requirement of actual fraud to invalidate a conveyance and explained that the "mere fact that one creditor was preferred over another, or that the conveyance might have the effect to secure one creditor and deprive others of the means of obtaining payment, was not sufficient to avoid a conveyance; but it was uniformly recognized that, acting in good faith, a debtor might thus prefer one or more creditors." *Id.* at 242. *Coder* does not change the outcome here.

As the BAP explained, "an actual fraudulent transfer occurs when the debtor makes a transfer with the actual intent either to hinder *or* to delay *or* to defraud creditors." Consistent with the statute's disjunctive tense, the BAP correctly observed that "an actual intent *to defraud* is [not] required." Rather, the BAP concluded that it was "sufficient that O'Gorman intended to hinder or delay Reynolds in his efforts to foreclose . . . [and O'Gorman and Appellants' plan] provided for the transfer of the Property for no consideration and without notice to creditors, which are two of the badges of fraud relied upon by the Trustee and the court." The BAP thus recognized that the transfer was not merely intended to prefer one creditor over another but was specifically intended to fraudulently hinder or delay Reynolds' foreclosure efforts. *Cf. Coder*, 213 U.S. at 242.

Next, Appellants argue that the bankruptcy court overlooked "direct evidence of Debtor's legitimate, non-fraudulent intentions" in transferring the property. This argument is also without merit. Appellants characterize the

federal law, we believe it was appropriate for the bankruptcy court to utilize Missouri's codification of the common law badges of fraud in its analysis.").

June 30, 2021 letter prepared by Utnehmer and signed by O'Gorman as direct evidence of non-fraudulent intent. But the letter merely describes the arrangement that O'Gorman and Utnehmer agreed to at the time O'Gorman transferred the property. At best, the letter is evidence that O'Gorman intended to enter into the venture with Utnehmer; it cannot establish that the venture did not have the fraudulent purpose of hindering or delaying Reynolds' foreclosure, as O'Gorman asserted in the uncontroverted declaration filed in support of the Trustee's motion for summary judgment. Because there is no way to verify that the letter itself is not part of the fraudulent scheme, it cannot speak to O'Gorman's ultimate intent in transferring the property. O'Gorman's asserted fraudulent intent was the fact that Appellants needed to dispute before the bankruptcy court.

Nor does O'Gorman's declaration "reveal[] her legitimate intent in transferring the Property," as Appellants contend. In her declaration, O'Gorman stated that "*Mr. Utnehmer informed* [*her*] *that he would develop plans to develop the Property* so that it could be sold at a high price and [she] would be able to realize a significant sum of money upon a sale." This statement merely recites what Utnehmer told O'Gorman; it does not concede that she was actually or solely motivated by Utnehmer's purported promise to develop the property. Indeed, the declaration states that O'Gorman "relied upon [Utnehmer's] advice at the time" because she "was desperate to save [her] home from foreclosure" and wanted to thwart Reynolds' foreclosure proceedings, not because she wanted to sell the property. Moreover, even if O'Gorman believed that Utnehmer would deliver on his promise, that belief does not exclude the possibility that O'Gorman also intended the transfer to hinder or delay Reynolds' attempt to foreclose.

Accordingly, the bankruptcy court did not err by finding no genuine dispute of fact concerning O'Gorman's intent.

Appellants' procedural objections to the order granting summary judgment are similarly unavailing. Appellants argue that the bankruptcy court erred because it granted summary judgment based on the lack of a responsive affidavit. Citing *Ahanchian v. Xenon Pictures, Inc.*, Appellants argue that "Ninth Circuit precedent bars district courts from granting summary judgment simply because a party fails to file an opposition or violates a local rule" and that trial courts have an "obligation to analyze the record to determine whether any disputed material fact was present." 624 F.3d 1253, 1258 (9th Cir. 2010).

There is no indication that either of those principles were violated in this case. The bankruptcy court did in fact consider Appellants' late-filed opposition brief and concluded that it failed to raise an issue of fact that prevented entry of summary judgment. The BAP similarly considered Appellants' opposition and the record in its de novo review and noted that Appellants raised only conclusory assertions unsupported by admissible evidence. This was not a case of summary judgment by default. *Cf. Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) (concluding that a local rule permitting district courts to deem a non-movant's failure to respond "a complete abandonment of its opposition . . . cannot provide a valid basis for granting a motion for summary judgment"). The BAP correctly concluded that "the bankruptcy court did not grant summary judgment solely" on the basis that Appellants did not file a responsive affidavit. "Rather, it reviewed the Trustee's evidence and determined that he had demonstrated the absence of a genuine dispute as to O'Gorman's actual intent so that the burden [at summary judgment] shifted to Appellants, *and*

Appellants had failed to present any admissible evidence to create a genuine dispute on that issue."

Next, Appellants argue that the bankruptcy court erred by granting summary judgment because they had no opportunity to conduct discovery or depose O'Gorman on the contents of her declaration.  Appellants cite no authority that would entitle them to discovery as a matter of right prior to the court's ruling on summary judgment.  Nor have Appellants shown why it was necessary to depose O'Gorman on the contents of her declaration in order to place her intent in dispute.  *Cf. Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (holding that, without the opportunity to undertake his own discovery, the plaintiff did not have a chance to support his claim that his employer was motivated to demote him because of his protected speech).[6]  Utnehmer, as the officer of CLC Compliance, signatory to the June 30, 2021 letter, and O'Gorman's attorney, could have presented an affidavit attesting to his own intent and to his understanding of O'Gorman's intent at the time O'Gorman transferred the property and when they executed the June 30, 2021 letter. He simply failed to do so.

On appeal, Appellants argue that their opposition to the Trustee's summary judgment motion disputed "whether Debtor received any consideration for giving Pacific

---

[6] The other case that Appellants cite, *Progress Development Corp. v. Mitchell*, 286 F.2d 222 (7th Cir. 1961), is also inapposite.  In that case, the district court determined that no genuine issue of fact existed after a hearing for a preliminary injunction, where plaintiffs had not presented all the evidence they needed to prevail on the merits.  *Id*. at 233.  The court of appeals concluded that it was error for the district court to grant summary judgment at that stage because "[n]o plaintiff is required to prove his case on the merits at a preliminary hearing."  *Id*.

Equities a beneficial interest in the Property, . . . and whether Mr. Reynolds was an actual creditor with a claim on the Property." But whether O'Gorman received consideration for the transfer is also a fact that Utnehmer would presumably know as owner of Pacific Equities and O'Gorman's lawyer at the time. And whether Reynolds was an actual creditor is not a material fact that prevented entry of summary judgment because, as we have explained, actual harm to a creditor is not an element of a § 548 claim. It is undisputed that O'Gorman believed she was indebted to Reynolds and that she acted with the intent to delay or hinder his foreclosure on her property.

Appellants argue that the bankruptcy court improperly denied their request for a continuance of summary judgment under Rule 56 to conduct discovery. *See* Fed. R. Civ. P. 56(d). We see no abuse of discretion.

"If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). A party requesting a continuance on a motion for summary judgment must therefore show: "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Fam. Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). "Failure to comply with these requirements is a proper ground for denying discovery and proceeding to summary judgment." *Id*. (internal quotation marks and citation omitted).

The bankruptcy court noted the absence of an affidavit or declaration from Utnehmer identifying what material facts Appellants hoped to discover and how those facts would preclude the entry of summary judgment. Because Appellants did not comply with the requirements of Rule 56, we conclude that the bankruptcy court did not abuse its discretion by denying Appellants' request. The BAP additionally noted that, even if it had accepted Appellants' opposition brief as a substitute for an affidavit, "Appellants failed to identify the specific facts they hoped to elicit through further discovery, that these facts existed, and that these sought-after facts were essential to oppose summary judgment." In their brief before this court, Appellants provide no reason to disturb that conclusion.

## IV.   CONCLUSION

We affirm the order granting summary judgment to the Trustee on his fraudulent transfer claim.

**AFFIRMED.**